374 So.2d 829 (1979)
Anthony Scott LEWIS
v.
Augustus P. SORIANO.
No. 51394.
Supreme Court of Mississippi.
September 5, 1979.
*830 Edward A. Williamson, Philadelphia, for appellant.
Eppes & Shannon, Walter W. Eppes, Jr., John E. Howell, Meridian, Terry L. Jordan, Philadelphia, Robert N. Brooks, Carthage, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
Plaintiff sued defendant in the Circuit Court of Neshoba County for medical malpractice. Following a jury verdict for the defendant, plaintiff appealed, and assigned as error, among other things, that he was entitled to a judgment notwithstanding the verdict of the jury. We have concluded the plaintiff was entitled to a judgment so we will not discuss the other assignments of error.
Plaintiff was injured in a motorcycle accident on October 14, 1974, and was examined by the defendant. The initial examination revealed plaintiff had sustained multiple bruises, lacerations and abrasions, a fractured talus, complicated by posterior dislocation of the talus, and was bordering on shock.
The defendant did not attempt to reduce the fracture until the morning of October 15 because, in his opinion, it would have been poor medical procedure to administer a general anesthetic and attempt reduction of the fracture and replacing the talus in the ankle joint until the danger of shock had passed. Defendant attempted a closed reduction on October 15 which was unsuccessful. On October 18 he performed an open reduction which was not successful so the plaintiff was admitted to the hospital on November 4 and another open reduction attempted. At this time the original screw was removed and replaced by a longer screw. A stymen pin was also inserted. This open reduction was unsuccessful so plaintiff was again hospitalized on January 6, and another open reduction attempted. Defendant was never able to replace the talus in its original position and reduce the fracture.
This case involves the question of whether the defendant's treatment of plaintiff's injuries should be measured by the accepted standard of care of a general family physician in the community where he practiced, or by the standard of care of a specialist in orthopedic surgery.
Defendant maintained throughout his testimony that he recommended unequivocally the transfer of the plaintiff to a qualified orthopedic surgeon when he first examined plaintiff and at frequent intervals during the following weeks of treatment, but plaintiff refused to leave the Neshoba County Hospital, insisting all medical procedures be conducted there. Defendant candidly admitted that the standard of care furnished defendant was inferior to the care that could have been furnished by an orthopedic surgeon, but undertook and continued to treat plaintiff only because he had no alternative since plaintiff was unwilling to go elsewhere for treatment.
*831 The testimony as to whether defendant recommended that the patient have his injury treated by an orthopedic surgeon on numerous occasions is sharply conflicting. However, it is uncontradicted that defendant's recommendation for referral to an orthopedic surgeon was qualified because he represented to the plaintiff that he could obtain a good result in the case. This is shown by defendant's testimony in the following questions and answers.
Q. Did you tell Tony Lewis that you could achieve a good result?
A. I was hoping that I could.
Q. Did you tell him that you could?
A. On the first internal fixation, yes.
Q. You did tell him that?
A. Yes.
Plaintiff was willing for defendant to treat him if he could obtain a good result. Since defendant told the patient he could achieve a good result thereby claiming he possessed the skill necessary to perform the procedure involved, the recommendation that plaintiff be referred to an orthopedic surgeon was qualified rather than unequivocal. We are of the opinion that the standard of care to be applied in this case is that of an orthopedic surgeon rather than a physician having a specialty in family practice. Defendant admitted that he did not possess the training or skill of an orthopedic surgeon but, nevertheless, undertook treatment of a complicated fracture and dislocation which requires special training and skill not possessed by the defendant. We hold that a judgment notwithstanding the verdict of the jury should have been granted by the trial judge and reach this conclusion from the testimony of the defendant himself.
If defendant had made an unqualified recommendation of referral to an orthopedic surgeon, but plaintiff refused to follow the recommendation, plaintiff could not later complain of defendant's lack of skill. In that case he would have relied on his own judgment, and could complain only if defendant negligently performed the treatment ordered. See 61 Am.Jur.2d Physicians and Surgeons, § 108, pp. 228, 229 (1972).
Defendant also argues that if he had refused to treat plaintiff he would be liable. No liability attaches to a physician who refuses to treat a patient when the treatment involves a specialty in which he has not had the training necessary to render treatment in that field of medicine. Further, in emergency situations, physicians are not liable for emergency care rendered. Section 73-25-37 Mississippi Code Annotated (Supp. 1978).
The treatment involved in this case was not an emergency although the testimony shows that reduction of a fracture and replacing a dislocated bone into its joint should be achieved without undue delay to avoid further complications. Orthopedic surgeons were available within thirty miles of Philadelphia, so delay in the treatment of the fracture and dislocated talus could have been delayed for the short time necessary to transport plaintiff to a place where qualified specialists were available without risk of complications which might arise as a result of undue delay in treatment.
REVERSED AND REMANDED FOR TRIAL ON ISSUE OF DAMAGES ONLY.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, BOWLING and COFER, JJ., concur.
LEE, J. took no part.