571 So.2d 972 (1990)
Diane WILLARD, Individually, and as Administratrix of the Estate of William E. Putman, Jr., Deceased
v.
The MAYOR AND ALDERMEN OF THE CITY OF VICKSBURG, a Municipal Corporation, Operating under a special charter and/or the City of Vicksburg, Mississippi, a Municipal Corporation.
No. 89-CA-0519.
Supreme Court of Mississippi.
December 5, 1990.
*973 Sam N. Fonda, Lott Sanders Franklin Fonda & Flanagan, Whitman D. Mounger, Greenwood, for appellant.
Leland S. Smith, III, McCoy Wilkins Noblin & Stephens, Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and BLASS, JJ.
BLASS, Justice, for the Court:
Appellant, Diane Willard, Conservator of the Person and Estate of William E. Putman, Jr., N.C.M., filed a complaint against the City of Vicksburg, Mississippi, a municipal corporation, on July 14, 1987. Appellant alleged that the appellee owned, maintained and operated an ambulance service in the vicinity of Vicksburg, Mississippi, and Warren County, Mississippi, and as a result owed a duty to the victims of accidents to promptly provide adequate treatment, care and transportation. Additionally, the appellant contended that her ward, William E. Putman, Jr., was seriously injured in a one-car accident on Interstate Highway 20 West, east of Vicksburg, Mississippi. Appellant then alleged that the following acts of negligence committed by appellee's employees, acting within the scope of their employment, proximately caused the condition and damages of Mr. Putman: (1) failure to timely respond to the call for emergency ambulance service; (2) failure to arrive on the scene within a reasonable period of time; (3) failure to use proper caution and care in removing Putman from his wrecked automobile; (4) failure to provide proper medical care and treatment to Putman at both the scene of the accident and during transport; and (5) failure to provide adequately trained personnel. Appellant filed an amended complaint on March 2, 1989, and alleged that on November 14, 1988, as a direct and proximate result of the negligent acts of the appellee and its employees, twenty-eight year old William E. Putman, Jr. committed suicide by a gun shot to the head.
Appellee filed a motion for summary judgment on June 8, 1988, and Judge Ellis granted said motion on March 22, 1989. In his opinion, Judge Ellis stated as follows:
The issue before this court is the standard of care required of ambulance crews covered by the Mississippi Good Samaritan Law.
Some Good Samaritan statutes grant absolute immunity, while others define the standard of care required. To some observers, the statute appeared to define the standard of care by simply codifying the common law. The statute was amended in 1979, and subsequent in that same year, the Mississippi Supreme Court decided Lewis v. Soriano, 374 So.2d 829 (Miss. 1979).
The Lewis case is the only Mississippi case construing the Good Samaritan Statute. It was construed in a non-emergency related case and on the heels of the amendment to the aforesaid statute. The Supreme Court's interpretation of the newly amended statute must be applied to the present case.
The Lewis case was a medical malpractice case. It involved the standard of care required of a physician. The Mississippi Supreme Court held that the defendant was liable for breaching the standard of care required of him as a physician since such was done at a hospital. But stated that according to the newly amended Good Samaritan Statute, that physicians would not be liable for emergency care rendered at the scene of an emergency.
This interpretation of the then newly-amended statute by the Mississippi Supreme Court places Mississippi in the category of states which grants absolute immunity for persons covered by the Good Samaritan Law. Physicians as well as certified, registered emergency medical technicians are within the class of people covered by the Good Samaritan Law when at the scene of an emergency and/or while transporting the injured *974 person to a hospital where medical assistance can normally be expected.
Therefore, and in accordance with the Lewis case, defendant is entitled to an order sustaining its motion for summary judgment.
There is but one issue before this Court in the instant case and that is whether or not the trial court erred in granting the defendant/appellee summary judgment based on Mississippi's Good Samaritan Statute.
During the early morning hours of April 6, 1985, the decedent, William E. Putman, Jr., was seriously injured in a one-car accident on Interstate Highway 20 West, just east of Vicksburg, Mississippi. Dan Hall, Jr., was the first to arrive on the scene and he called the Warren County Sheriff's department and talked with Ralph Lick and told him that there had been a serious accident and he needed an ambulance immediately. Ralph Lick stated in his affidavit that his daily log reflected that he received a call from Dan Hall at 6:17 a.m. on April 6, 1985. The Vicksburg-Warren Ambulance Service Run Report shows that the defendant responded or left the terminal at 6:38 a.m.[1] Mr. Hall testified that it was at least 30 minutes, and probably longer, before either the ambulance or the rescue unit arrived on the scene. Two expert witnesses swore in affidavits that 21 minutes is an excessive amount of time for a response to an emergency call.
Appellee contended that upon arrival on the scene Mr. Putman was unconscious, but had a pulse and was breathing on his own. This is contrary to the run report which shows that Mr. Putman had neither a pulse rate nor a blood pressure at the scene.
The crew entered the wrecked car[2] and stabilized Mr. Putman with a backboard and a cervical collar prior to his removal. Once inside the ambulance, Mr. Putman was given an oxygen mask and his vital signs were monitored as he was being transported to the hospital. Appellee contended that upon arrival, at the hospital, Putman arrested and had to be revived through CPR.
Dr. Don Carpenter, a Jackson neurologist, testified in his deposition that, in his opinion, Putman suffered from a condition known as Lance-Adams Syndrome caused by a period of sustained low blood flow and low oxygen to the brain. According to Dr. Carpenter, Putman was bound to a wheelchair and could not ambulate, was significantly visually handicapped, and had psychological and mental difficulty and would be totally disabled for the rest of his life.
At common law a person did not have a duty to render emergency aid to one in need; however, if one did render aid he was subject to liability. See, e.g., Restatement (Second) of Torts §§ 314, 324 (1965). Good Samaritan laws were enacted to remove the common law liability associated with rescue so as to encourage people to stop and render aid. In 1959 California passed the first statute and since then all fifty states have followed suit. Brandt, Good Samaritan Laws  The Legal Placebo: A Current Analysis, 17 Akron L.Rev. 303, 303 (1983). Mississippi's statute reads as follows:
No duly licensed, practicing physician, dentist, registered nurse, licensed practical nurse, certified registered emergency medical technician, or any other person who, in good faith and in the exercise of reasonable care, renders emergency care to any injured person at the scene of an emergency, or in transporting said injured person to a point where medical assistance can be reasonably expected, shall be liable for any civil damages to said injured person as a result of any acts committed in good faith and in the exercise of reasonable care or omissions in good faith and in the exercise of reasonable care by such persons in rendering the emergency care to said injured person.
Miss. Code Ann. § 73-25-37 (Supp. 1988).
Lewis v. Soriano, 374 So.2d 829 (Miss. 1979) is the only case which interprets *975 § 73-25-37. Lewis was a medical malpractice case wherein the main issue concerned whether the doctor's standard of care should be equated with a general family physician or a specialist. Lewis, 374 So.2d at 830. Even though Lewis did not involve an emergency situation, this Court observed that "[I]n emergency situations, physicians are not liable for emergency care rendered. Section 73-25-37 Mississippi Code Annotated (Supp. 1979)." Lewis, 374 So.2d at 831.
In the instant case, Judge Ellis reasoned that Lewis stood for the proposition that § 73-25-37 granted absolute immunity for persons covered by the Good Samaritan Law. We hold that Judge Ellis clearly misconstrued this language by granting appellee absolute immunity under the statute. The language quoted supra is "mere dicta" because Lewis did not involve an emergency situation and therefore the application of § 73-25-37 was irrelevant to the main issue.
A strict reading of § 73-25-37 grants immunity to anyone who renders emergency care in good faith and with reasonable care at the scene of the accident or during transportation to a medical facility. Because we decide this case on other grounds, we decline to interpret the statute. However, we invite the legislature to review and amend § 73-25-37 to include a pre-existing duty exception. Those who have a pre-existing duty to render aid should not be allowed to hide behind the cloak of the Good Samaritan Statute.
Additionally, the standard of care required by our statute is one of reasonableness. This is the same as the common law. In other words, § 73-25-37 fails miserably in its two-fold purpose which is to remove the common law liability associated with rescue and to encourage people to stop and render aid to those in need. We invite the legislature to adopt a higher degree of protection.
Judge Ellis disposed of this case via summary judgment. This Court's scope of review of summary judgments was most recently set out in Newell v. Hinton, 556 So.2d 1037 (Miss. 1990) as follows:
In determining whether the trial court was proper in granting ... Summary Judgment, we must conduct de novo review.
The law governing the grant or denial of a motion for summary judgment is well established. This Court has explained repeatedly:
The trial court must review carefully all of the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
.....
The movant is strapped with the burden of demonstrating that no genuine issue of fact exists while the non-movant is given the benefit of every reasonable doubt. By the same token, however, the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.
Newell, 556 So.2d 1037, 1041 (Miss. 1990) (citations omitted).
We hold that the trial court erred in granting the appellee summary judgment. This case should have gone to the jury because there exist under the statute genuine issues of material fact regarding the timeliness and reasonableness of the care received.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
NOTES
[1] This is 21 minutes after the sheriff dispatcher said that he called them.
[2] The "Jaws of Life" were used in removing Mr. Putman from the vehicle.