# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01555-SCT

*WILLIAM T. BRANTLEY*

*v.*

*CITY OF HORN LAKE, MISSISSIPPI*

DATE OF JUDGMENT:          09/05/2012
TRIAL JUDGE:               HON. GERALD W. CHATHAM, SR.
TRIAL COURT ATTORNEYS:     KEITH M. ALEXANDER
                           ROY JEFFERSON ALLEN
COURT FROM WHICH APPEALED: DESOTO COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   KEITH M. ALEXANDER
                           BEN ALEXANDER
ATTORNEY FOR APPELLEE:      ROY JEFFERSON ALLEN
NATURE OF THE CASE:         CIVIL - PERSONAL INJURY
DISPOSITION:                REVERSED AND REMANDED - 12/04/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     William T. Brantley filed a personal injury action against the City of Horn Lake seeking to recover monetary damages for injuries he sustained due to the alleged negligence of a member of the City's fire department. The trial court granted summary judgment to the City, and Brantley now appeals to this Court. Finding that the City is not entitled to sovereign immunity under the Mississippi Tort Claims Act ("MTCA"), we reverse the trial court's grant of summary judgment and remand for further proceedings.

## FACTS & PROCEDURAL HISTORY

¶2. On May 10, 2010, Brantley lacerated his forehead while repairing his pickup truck at his residence in Horn Lake. Brantley called for an ambulance to transport him to Baptist-DeSoto Hospital. Stephen Lowery was a member of the ambulance crew that responded to Brantley's call. Lowery was a firefighter for the Horn Lake Fire Department but also was licensed as an emergency medical technician (EMT) and was trained as an ambulance driver. Upon arriving at his home, Emergency Medical Services (EMS) personnel bandaged Brantley's wound, and he was transported to the hospital in the ambulance. Lowery was the driver of the ambulance. As the ambulance crew was unloading Brantley at the hospital, Lowery lost control of the stretcher Brantley was on and dropped him. As a result, Brantley alleges he sustained damages, including medical bills and expenses.

¶3. Brantley filed a complaint against the City on April 27, 2011, alleging that the members of the Horn Lake Fire Department's ambulance crew were negligent in failing to control the stretcher when it collapsed with him on it. The City moved for summary judgment, arguing that it was immune from suit under the MTCA, specifically Section 11-46-9(1)(c) of the Mississippi Code. That section provides immunity from suit for governmental employees engaged in the performance or execution of duties or activities in relation to police or fire protection. Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012). In response to the motion, Brantley filed three items: a response to the City's asserted undisputed material facts and a statement of additional material facts, a response in opposition to the motion for summary judgment, and the affidavit of Brantley.

2

¶4. On May 7, 2012, the circuit court judge entered an order denying summary judgment, holding that Brantley's affidavits created a genuine issue of material fact. On May 10, 2012, the City submitted a rebuttal supporting its motion for summary judgment and argued that the order denying summary judgment and its rebuttal brief had crossed in the mail. On August 13, 2012, the City filed a renewed motion for summary judgment on the same grounds. The circuit court granted the City's renewed motion for summary judgment and entered an order staying the case.

¶5. Brantley has appealed to this Court, arguing that the trial court improperly granted summary judgment for two reasons. First, Brantley argues that the conduct that caused his injury is not protected by the fire-protection exemption of the MTCA. Brantley also argues that the trial court erred in granting summary judgment despite the existence of genuine issues of material fact. This Court requested supplemental briefing from the parties to discuss the applicability of the discretionary-function exemption of the MTCA, Section 11-46-9(1)(d) of the Mississippi Code.

## STANDARD OF REVIEW

¶6. The Mississippi Legislature has determined that governmental entities and their employees shall be exempt from liability in certain situations outlined in the MTCA. Miss. Code Ann. § 11-46-9 (Rev. 2012). "This exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation." *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (¶ 8) (Miss. 2003). Accordingly, "immunity is a question of law and is a proper matter for summary judgment[.]" *Id.* This Court reviews the

application of the MTCA *de novo*. **Lee v. Mem'l Hosp. at Gulfport**, 999 So. 2d 1263, 1266 (¶ 8) (Miss. 2008).

## DISCUSSION

¶7.     At issue in this case are two exceptions to the waiver of sovereign immunity enumerated in Section 11-46-9 of the Mississippi Code. First, Section 11-46-9(1)(c), the police-or-fire-protection exception, provides immunity from claims "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012). Second, Section 11-46-9(1)(d), the discretionary-function exception, provides immunity from claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). We shall discuss these two exemptions from liability separately.

**I.      Whether a claim for an injury occurring during a transport by an ambulance service is subject to the fire-protection exemption of the MTCA.**

¶8.     Brantley argues that the MTCA's fire-protection exemption is inapplicable to this case because Lowery, although technically a firefighter, was not engaged in an activity directly related to fire protection when he allegedly caused Brantley's injury.[1] In response, the City

---

[1]The issue of Lowery's alleged negligence is not before this Court at this stage of the litigation. Today, we must decide only the initial legal question of whether the MTCA acts

4

argues that Section 11-46-9(1)(c) does not require the action in question to be directly related to fire protection, and that responding to a 911 injury call fits directly within a firefighter's job description.

¶9.     Section 11-46-9(1)(c) does not speak to the precise scope that should be given to the phrase "fire protection." We agree with the trial court that this provision is ambiguous and overly broad. When a statute is ambiguous or silent on a specific issue, this Court must "carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." *Pope v. Brock*, 912 So. 2d 935, 937 (¶ 8) (Miss. 2005). "All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." Miss. Code Ann. § 1-3-65 (Rev. 2014). *See also* ***Estate of Klaus v. Vicksburg Healthcare, LLC***, 972 So. 2d 555, 557-59 (Miss. 2007) (holding that the MTCA must be read *in pari materia* with the provisions of Title 1 of the Mississippi Code).

¶10.     This Court has not previously interpreted the scope of the phrase "fire protection" in Section 11-46-9(1)(c). However, the Court of Appeals recently decided two cases dealing with the scope of the phrase. First, in ***Herndon v. Mississippi Forestry Commission***, 67 So. 3d 788 (Miss. Ct. App. 2010), the Court of Appeals was asked to determine whether the fire-protection exemption of the MTCA applied to an employee of the Mississippi Forestry Commission ("MFC"). In ***Herndon***, the forestry commission employee was tasked with

---

as a complete bar to Brantley's claim. In so doing, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to Brantley. *See* ***Knight v. Terrell***, 961 So. 2d 30, 31 (¶ 6) (Miss. 2007); ***Harris v. Shields***, 568 So. 2d 269, 275 (Miss. 1990).

driving a transport truck to pick up a bulldozer that "was needed for fire-protection services as Pearl River County was under a state of emergency as a result of Hurricane Katrina[.]" *Id.* at 790 (¶ 2). On his way to pick up the bulldozer, the state employee was involved in an automobile accident with the plaintiff. *Id.* at 791 (¶ 4). The plaintiff filed a personal injury complaint against the forestry commission, and the trial court granted summary judgment to the agency based in part on immunity under Section 11-46-9(1)(c). *Id.* (¶ 5). On appeal, the plaintiff argued that the MFC was not an agency contemplated by the police-or-fire-protection exemption. *Id.* (¶ 8). The Court of Appeals rejected that argument, finding that the MFC is statutorily authorized to "prevent, control, and extinguish forest fires[.]" *Id.* at 792 (¶ 9) (quoting Miss. Code Ann. § 49-19-3(b) (Supp. 2009)). The MFC employee worked as a forest ranger, and fire-suppression duties were part of his job description. *Id.* (¶ 10). Thus, the Court of Appeals held that "[Section 11-46-9(1)(c)] does not limit such immunity to police officers and fire departments. It merely states that the duties or activities must relate "to police or fire protection." *Id.* The Court of Appeals also rejected the plaintiff's argument that the MFC employee merely was performing "maintenance work," finding that immunity under the MTC also applied to "ordinary duties related to police and fire protection." *Id.* at 793 (¶ 11).

¶11.    More recently, in *Land v. Attala County Board of Supervisors*, 116 So. 3d 1085 (Miss. Ct. App. 2012), the Court of Appeals was presented with a case involving conduct with an equally tangential relation to "fire protection." In *Land*, a group of county firefighters was responding in a fire engine to a reported automobile accident. *Id.* at 1086 (¶ 4). Upon reaching the scene of the accident, the firefighters accidentally ran over the

6

decedent, who had been involved in the accident and subsequently had collapsed in the roadway. *Id.* The decedent's beneficiaries filed a wrongful death suit against the county, but the trial court granted summary judgment to the county based on MTCA immunity. *Id.* (¶ 5). The Court of Appeals affirmed the trial court's grant of summary judgment. *Id.* at 1088 (¶ 11). Interestingly, the only disputed issue before the Court of Appeals was whether the firefighters had acted in reckless disregard for the safety and well-being of the decedent, a question not before this Court in the instant case. In its discussion, the Court of Appeals found that it was undisputed that the firefighters were acting within the course and scope of their employment and that their conduct was related to fire protection. *Id.* at 1087 (¶ 7).

¶12.    Here, the City cites both *Herndon* and *Land* to support its argument that Section 11-46-9(1)(c) does not require the activity in question to be strictly related to fire protection. We disagree. *Herndon* actually supports Brantley's position that the conduct in question must bear some reasonable relation to fire protection. *Herndon* correctly recognized that Section 11-46-9(1)(c) does not provide immunity to police officers and firefighters without requiring the subject activity to be related "to police or fire protection." *See Herndon*, 67 So. 3d at 792 (¶ 10). Thus, the MFC in *Herndon* was shielded from liability from a claim arising out of an activity when its employee was acting within the course and scope of his employment, performing duties that bore some reasonable relation to fire protection. But the inverse of this conclusion also must be true: a governmental entity is not immune from liability under Section 11-46-9(1)(c) for the acts of its police officers or firefighters if those acts are not sufficiently related to police or fire protection. The employee's job title alone cannot serve

7

as a shield from liability. ***Land*** lends no support to the City, as there was no dispute that the county employees in that case were performing a fire-protection function.

¶13. The MTCA does not contain a provision exempting governmental entities from liability from claims arising out of the provision of ambulance services. Rather, such claims are governed by Mississippi's "Good Samaritan Law," Section 73-25-37 of the Mississippi Code, which predates the MTCA. *See* Miss. Code Ann. § 73-25-37 (Rev. 2012). This Court has held that, under Section 73-25-37, the standard of care applicable to those rendering emergency medical assistance, including ambulance services, is "one of reasonableness." ***Willard v. Mayor and Alderman of City of Vicksburg***, 571 So. 2d 972, 975 (Miss. 1990). The Legislature has done nothing to change this area of the law, suggestions of this Court notwithstanding, *see* ***Willard***, 571 So. 2d at 975, even after the enactment of the MTCA.

¶14. Looking to the common meaning of the words and phrases in Section 11-46-9(1)(c), we find that the phrase *fire protection* refers to those activities that bear a rational connection to the performance of firefighting activities. The Legislature has had ample opportunity to provide a more precise definition of "fire protection," or to include ambulance services as an exemption from liability under the MTCA. In the absence of such action, we find that Lowery's actions as part of an ambulance crew in the instant case were not related to fire protection. Discussing the purpose of Section 11-46-9(1)(c), this Court has opined, "Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence." ***Maldonado v. Kelly***, 768 So. 2d 906, 909 (¶ 6) (Miss. 2000). Unloading a patient from a

stretcher, under the facts of this case, has no arguable connection to "fire protection." Thus, Section 11-46-9(1)(c) does not shield the City from liability.

¶15.    Because Lowery was not engaged in an activity related to fire protection when he allegedly caused Brantley's injury, we hold that exemption from liability under Section 11-46-9(1)(c) is inapplicable to this case.

II.    **Whether the City is entitled to sovereign immunity based on the discretionary-function exemption of the MTCA.**

¶16.    Summary judgment was granted to the City based upon the fire-protection immunity granted under Section 11-46-9(1)(c) and nothing else. This Court, on its own initiative, requested supplemental briefing on the application of discretionary-function immunity pursuant to Section 11-46-9(1)(d). "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof. . . ." Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). This Court has wrestled with the applicability of discretionary-function immunity for years. We now undertake to articulate a workable rule, giving effect to the plain language of the statute.

¶17.    Historically, this Court has applied a two-part public-policy function test "to determine if 'governmental conduct is discretionary so as to afford the governmental entity immunity.'" ***Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789, 795 (¶ 20) (Miss. 2012) (quoting ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 260 (Miss. 1999) *abrogated on other grounds*). Under the test, the Court first determines "whether the activity in question

9

involved an element of choice or judgment[,]" and, if so, "whether that choice or judgment involved social, economic, or political-policy considerations." *Montgomery*, 80 So. 3d at 795 (¶ 20) (citing *Jones*, 744 So. 2d at 260). If the duty or activity which forms the basis of the suit "is not imposed by law and depends upon the judgment or choice of the government entity or its employee[,]" then the duty or activity is discretionary. *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 72 (¶ 9) (Miss. 2012) (quoting *Montgomery*, 80 So. 3d at 795).

¶18. This Court adopted its two-part public-function test from the United States Supreme Court. *Jones*, 744 So. 2d at 260 (citing *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). The Court did so because it found that "Section 11-46-9 appears to be patterned after 28 U.S.C. § 2680(a), the 'discretionary function' exception to the Federal Tort Claims Act." *Jones*, 744 So. 2d at 260 (¶ 10). While our tort claims act may have been patterned after the federal act to some extent, it includes an important distinction, and is by no means identical.

¶19. In *Jones*, this Court failed to account for the fact that the Mississippi Tort Claims Act contains a requirement not present in the Federal Tort Claims Act: that the immunity attaches to a "governmental entity and its employees *acting within the course and scope of their employment or duties. . . .*" Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012) (emphasis added). And the judicial adoption of that test imposed a restriction on immunity neither derived from nor contemplated by Mississippi's statutory language: that the activity in question "involved social, economic, or political policy considerations." *Montgomery*, 80 So. 3d at 795 (¶ 20) (citing *Jones*, 744 So. 2d at 260). Chief Justice Waller's separate opinion, in effect,

perpetuates that error by its reliance upon additional federal precedent. So today we complete our return to a strict application of Mississippi's statutory language and abolish the two-part public-function test.

¶20.    Recently, this Court effectively abandoned the public-policy function test and clarified the standard for determining whether discretionary-function immunity applies. In *Little v. Mississippi Department of Transportation*, 129 So. 3d 132, 138 (¶ 10) (Miss. 2013), the Court held that it is the function being fulfilled, rather than the act performed in furtherance of that function, to which discretionary-function immunity does or does not attach. The Court in that case determined that, because the function of roadway maintenance was mandated by statute,[2] that function was ministerial and immunity did not apply, despite the discretion the Mississippi Department of Transportation enjoyed in deciding how and when it would perform the acts of road maintenance. *Id.* (¶¶ 10-11). In that sense, the Court found that the discretion in deciding *whether* to exercise a function or duty is where immunity attaches, rather than the discretion in deciding *how* to do it.

¶21.    In reaching that decision, the Court did not rely upon the public-policy function test at all. It relied instead upon the plain language of Section 11-26-9(1)(d), which clearly states that immunity attaches either to functions or duties, not to acts. However, the Court did note that ministerial acts can be rendered discretionary. "Because Section 65-1-65 requires the Department to maintain and repair state highways, that duty–and all acts in furtherance of that duty–are ministerial unless, as in *Montgomery*, another statute makes a particular act

---

[2]*See* Miss. Code Ann. § 65-1-65 (Rev. 2012) ("It shall be the duty of the state highway commission to have the state highway department maintain all highways. . . .")

11

discretionary." *Id.* (¶ 11). Through that statement, the *Little* Court left one remnant of this Court's focus on acts rather than functions in its homeward journey toward our statute's language. We therefore take this opportunity to clarify that statement.

¶22. While immunity attaches to functions or duties, it is conspicuously obvious that governmental entities and their employees engage in their respective functions and duties only through their acts. Accordingly, all acts performed in furtherance of a discretionary function or duty are themselves entitled to immunity. Our holding in *Little* stands for the principle that all acts in furtherance of a ministerial function lack immunity notwithstanding that the act itself may involve an element of discretion. That said, while one statute may render a broad function ministerial, another statute or regulation may render a duty involved with that function discretionary, thus allowing the performance of such a duty to enjoy immunity.[3] And clearly, the converse must be true, such that narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation. Accordingly, although *Little* requires us to look at the broad governmental function to determine whether it is discretionary, it still is necessary to examine any narrower duty that may have formed the basis of the claim against the governmental entity to determine whether that particular duty has been rendered discretionary or ministerial by statute or regulation. This was unnecessary in *Little*, as the Legislature already had affirmatively created a

---

[3]Such was recognized by this Court in *Montgomery*. "Occasionally . . . the Legislature will mandate that a political subdivision fulfill some particular function, but then specifically set forth that some portion or aspect of that function is discretionary. When that happens, acts fulfilling the discretionary portion of the governmental function enjoy immunity." *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 798 (¶ 31) (Miss. 2012).

12

ministerial duty to maintain the roads through its enactment of Section 65-1-65. However, many other situations in which this issue arises will not be so easily determined.

¶23.    This Court has examined the broad governmental function implicated by the suit to determine whether immunity applied, rather than the specific activity involved, in several prior cases. In the pre-*Little* case of *Pratt*, a plurality of the Court determined that a municipality was entitled to discretionary-function immunity for a suit based upon the alleged improper placement of nonslip tape on temporary airstairs at a municipal airport. *Pratt*, 97 So. 3d at 75-76 (¶ 19). The plurality opined that the act of placing the tape on the stairs was performed in furtherance of the discretionary function of a municipality's operation of an airport. *Id.* at 72 (¶ 10). The parties in that case had agreed that placing nonslip tape on airstairs "was not a ministerial function, as there [we]re no laws or regulations pertaining to th[at] activity." *Id.* The plurality concluded that, "barring a rule or regulation pertaining to a certain activity, decisions that are part of the airport's day-to-day operations are also discretionary." *Id.* Importantly, the plurality noted "that there are many laws, rules, and regulations pertaining to aviation and airports, so not every day-to-day decision or activity at an airport will be discretionary." *Id.* at 73 (¶ 14).

¶24.    While it is true, as the dissent contends, that the plurality in *Pratt* applied the public-policy function test, it was clear that the overarching discretion involved with operating an airport was the dispositive factor in finding immunity. The plurality held that certain day-to-day decisions such as the placement of nonslip tape on airstairs fell "under the *overall operation* of the airport." *Id.* at 75 (¶ 18). The regional airport authority's "operation of the airport involve[d] social and economic policy considerations, satisfying the second part of

13

the public-policy function test." *Id.* (emphasis added). Any concept of the sort of policy decisions implicit in deciding how to place nonslip tape on airstairs was completely subsumed by the fact that the decision to operate an airport was discretionary and implicated economic policy considerations. Clearly, this Court looked at the broad governmental function of airport operation implicated by the suit when it determined that discretionary-function immunity applied, rather than analyzing the specific activity of placing nonslip tape on stairs.

¶25. Further, in *City of Jackson v. Doe ex rel. J.J.*, 68 So. 3d 1285, 1288 (¶ 12) (Miss. 2011), in which Chief Justice Waller joined the majority opinion, this Court held that a city was not liable for a dangerous condition in one of its parks because the "operation of a city park is a discretionary function of the city." In so holding, the Court did not examine the specific conduct which had led to the injuries involved, i.e., maintaining the park in a reasonably safe condition.[4] Instead, the Court stated that the "creation and operation of a city park is within the discretion of the municipality[,]" and thus immunity applied. *Id.* Again, the Court did not focus on the specific activity in question, but rather on the overarching function of the operation of a public park. So, while the dissent in the present case may argue that this approach arises from some novel understanding of the law, in actuality, this Court has been focusing on the function, rather than on the act, for some time now.

_____

[4]The opinion in *Doe* clearly states that the plaintiffs alleged that their children "were injured because the defendants had failed to maintain the park in a reasonably safe condition." *City of Jackson v. Doe ex rel. J.J.*, 68 So. 3d 1285, 1287 (¶ 3). The Court did not examine any specific activity which could have prevented the injury alleged, but simply and directly determined that the overall operation of a city park was a discretionary function. *Id.* at 1288 (¶ 11).

¶26.    In ***Pratt***, ***Montgomery***, and ***Little***, this Court recognized that, although a broad function, such as the operation of an airport, may be discretionary, or that road maintenance may be ministerial, within those functions may lie more narrowly defined duties which may be rendered ministerial or discretionary through other legislative enactments or through regulations. Accordingly, the language in ***Little*** which provides that the Court must look only at the function can be misunderstood. The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.

¶27.    For example, in the context of ***Pratt***, operators of an airport are, of course, required to conduct security screenings of passengers who are attempting to board airplanes. A municipality's decision to operate an airport may be discretionary; but once that discretion has been exercised to operate the airport, the municipality must comply with security regulations promulgated by the Transportation Security Administration. In this way, it is useful to think of the operation of an airport as an overarching discretionary function that shelters several narrower functions or duties, many of which, such as the provision of security and compliance with federal security regulations, are ministerial.

¶28.    Because sovereign immunity attaches when the governmental function involved is discretionary, the plaintiff bears the burden of proving that the narrower function or duty at issue has lost its discretionary-function immunity. Therefore, we hold that a plaintiff may

15

defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.

¶29. Chief Justice Waller would have us overrule our recent holding in *Little*, a decision which commanded the votes of seven members of this Court. The Chief Justice's opinion is well reasoned in its application of the public-policy function test, and its logic is not without appeal. Would that it were that simple. However, we are bound by the explicit language of the Mississippi statute which establishes discretionary-function immunity. *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

¶30. The question is whether–as Chief Justice Waller posits–immunity attaches to discretionary acts; or–as the majority holds–immunity attaches to the acts committed in the exercise of discretionary functions. To settle the issue, one need only consider the language of the statute that is quoted in the Waller opinion. He writes: "Section 11-46-9(1)(d) clearly requires this Court to look at the specific activity in question, because it is the *performance* of a discretionary function that is guaranteed immunity." The word "discretionary" is an adjective that modifies the noun "function." The Chief Justice insists that "discretionary" modifies the noun "act." But neither the word "acts" nor the phrase "discretionary acts" is found in the subsection establishing discretionary-function immunity. *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

¶31. The confusion stems from the fact that functions can be furthered only through engagement in acts. The statute grants immunity "based upon the exercise or performance

16

or failure to exercise or perform a discretionary function or duty. . . ."*Id.* How does one do what the statute requires? That is to say, how does one "exercise or perform" a discretionary function? The answer, of course, is by engaging in acts. And in granting immunity, the statute draws no distinction between discretionary acts and mandatory acts, as long as the acts are undertaken in the performance of "a discretionary function or duty. . . ." *Id.* So it is the nature of the function that must be determined, and not the nature of the act.

¶32. Further, Chief Justice Waller relies on federal cases applying the two-part public-function test created by the United States Supreme Court in its interpretation of the Federal Tort Claims Act, 28 U.S.C. § 2680 (Rev. 2009). That Court has explained that the application of the public-function test will necessitate an analysis of an act involving some discretion to determine whether a particular act shares the immunity of the function it furthers. Were Mississippi to maintain that test, the federal precedent that the Chief Justice cites might be persuasive. But the Mississippi statute's explicit language requires us to abandon the public-function test, because its language does not limit the immunity enjoyed in the exercise of a discretionary function to discretion involving policy judgments. Instead, the statute requires only that the discretion be exercised in the course and scope of the entity or employee's employment or duty.

¶33. Now, in the case before us, Brantley alleges that he was injured when he was improperly removed from an ambulance and caused to fall to the ground. We must determine what function the governmental entity, in this case the City, was performing. Clearly, the overarching function being performed was the operation of a city-run ambulance service. The Legislature has declared that a municipality, in its discretion "and upon finding that adequate

17

public ambulance service would not otherwise be available, may own, maintain, and operate a public ambulance service as a governmental function, fix and collect charges therefor, and adopt, promulgate and enforce reasonable rules and regulations for the operation of said service." Miss. Code Ann. § 41-55-1 (Rev. 2013). So, when a city determines that inadequate ambulance service is available within its corporate limits, it may, in its discretion, own, maintain, and operate an ambulance service. The function of operating an ambulance service explicitly is discretionary, according to state statute. Accordingly, all acts in furtherance of that function are presumptively discretionary.

¶34.    However, the Court now must also consider the fact that, once a municipality has decided to operate and maintain its own ambulance service, it is subject to several ministerial statutes and regulations which remove the municipality's discretion from many functions and duties and render such functions and duties ministerial.[5] In this case, the provision of ambulance services falls completely under the ambit of the State Board of Health.

¶35.    The Board of Health is wholly responsible for regulating emergency services in Mississippi.

> The State Board of Health shall establish and maintain a program for the improvement and regulation of emergency medical services (hereinafter EMS) in the State of Mississippi. The responsibility for implementation and conduct of this program shall be vested in the State Health Officer of the State Board of Health along with such other officers and boards as may be specified by law or regulation.

---

[5]In a similar way, persons may exercise their discretion in whether to have a child. However, once that child is born, there are certain nondelegable and mandatory duties that the parent must peform.

Miss. Code Ann. § 41-59-5(1) (Rev. 2013). The rules governing the operation of emergency services require absolute compliance.[6] The governing authorities of Horn Lake have no choice but to adhere to the mandatory edicts of the State Board of Health governing the operation of its ambulance service. A city must obtain a license and permit to operate ambulances on the streets and highways of Mississippi,[7] it must submit its ambulance service to inspections at least twice a year,[8] and it must utilize ambulances that conform to the ambulance standards dictated by the Board of Health.[9] The public ambulance service must be staffed by certified emergency medical technicians ("EMTs") who have been certified according to the "board's approved emergency medical technical training program,"[10] and the board has exclusive authority for developing the EMT training program.[11] The Board of Health is further empowered "to suspend or revoke a license whenever it determines that the holder no longer meets the requirements prescribed for operating an ambulance service." Miss. Code Ann. § 41-59-17(1) (Rev. 2013).

---

[6]"The board shall provide for the regulation and licensing of public and private ambulance service, inspection and issuance of permits for ambulance vehicles, training and certification of EMS personnel, including drivers and attendants, the development and maintenance of a statewide EMS records program, development and adoption of EMS regulations, the coordination of an EMS communications system, and other related EMS activities." Miss. Code Ann. § 41-59-5(2) (Rev. 2013).

[7]Miss. Code Ann. § 41-59-9 (Rev. 2013).

[8]Miss. Code Ann. § 41-59-15 (Rev. 2013).

[9]Miss. Code Ann. § 41-59-25 (Rev. 2013).

[10]Miss. Code Ann. § 41-59-33 (Rev. 2013). In that sense, the duty to have properly trained EMTs would be a ministerial one.

[11]Miss. Code Ann. § 41-59-31 (Rev. 2013).

19

¶36. In other words, once a city has decided to operate an ambulance service, many aspects of the operation of that service are dictated to the city by the Board of Health, and noncompliance with those mandatory regulations can result in the revocation of the city's authority to operate that service. The Mississippi Administrative Code provides several mandatory requirements for the licensure of ambulance services, individual ambulances, emergency medical technicians, and ambulance drivers. *See generally* Miss. Admin. Code 15-12-31. Accordingly, this Court must look closely at any of the narrower functions or duties underlying the claim at issue and determine whether a statute or other regulation removes it from the umbrella of discretionary function immunity.

¶37. Here, Brantley alleges that he was improperly unloaded from an ambulance and dropped on the ground. On the one hand, it would seem that the duty incumbent upon ambulance services of actually delivering someone to a hospital via ambulance would require, without discretion, the duty of actually removing that person from the ambulance safely. However, this Court does not know whether the emergency medical technicians, as a part of their training, or under some other duty established by regulation or ordinance, were required or trained how to fulfill the duty of unloading a patient from an ambulance safely. And, as pointed out by Brantley in his supplemental brief, he does not know either. Summary judgment was granted on the theory of fire-protection services immunity. The trial court did not consider discretionary-function immunity, and the plaintiff did not tailor his discovery to address possible rules or regulations that would make the duty to remove someone safely from an ambulance a ministerial one. If such a regulation exists, the plaintiff will be able to proceed on his claim. If not, Horn Lake will be entitled to discretionary-function immunity.

## CONCLUSION

¶38. Stephen Lowery was not engaged in an activity related to fire-protection services when the alleged injury to William Brantley occurred. Accordingly, we hold that the exemption provided by Section 11-46-9(1)(c) is inapplicable in this case, and summary judgment as granted by the DeSoto County Circuit Court on those grounds was inappropriate.

¶39. The City of Horn Lake's operation of an ambulance service is a discretionary function. As such, acts performed as part of its engagement in such a function generally entitle it to discretionary-function immunity pursuant to Section 11-46-9(1)(d). However, when engaged in that function, several duties involved with the operation of the ambulance service are ministerial, as the service is closely regulated by the State Board of Health through its administrative regulations. Because this Court has injected the aspect of discretionary-function immunity into the proceedings, the plaintiff has had no opportunity to tailor his discovery or strategy to address the possibility of a rule, regulation, or statute which may render the duty of removing a person from an ambulance a ministerial one, and thus could remove such duty from the umbrella of discretionary-function immunity. On remand, if the plaintiff can prove that the defendant was fulfilling a function or duty mandated by a specific statute, ordinance, or regulation promulgated pursuant to lawful authority, then he may proceed with his claim. Accordingly, we reverse the grant of summary judgment by the DeSoto County Circuit Court, and remand for further proceedings consistent with this opinion.

¶40. **REVERSED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶41.    I fully concur with the majority's holding that Horn Lake is not entitled to immunity under Section 11-46-9(1)(c) in this case. I also agree with the majority's ultimate conclusion that this case must be reversed and remanded to the trial court for further proceedings. However, I do not agree with the majority's position that, on remand, the trial court must make a threshold determination of the applicability of Section 11-46-9(1)(d), the discretionary-function exception, as I believe that provision does not apply in this case. I write separately to state what I believe to be the proper analysis for determining the applicability of the discretionary-function exception.

¶42.    The MTCA's discretionary-function exception is patterned on federal law. The Federal Tort Claims Act (FTCA) was enacted roughly forty years prior to the enactment of the MTCA. The FTCA waived the federal government's sovereign immunity against claims "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" *See* 28 U.S.C. § 2679(b)(1) (1988). Like the MTCA, the FTCA contains numerous exceptions to this waiver of immunity. *See* 28 U.S.C. § 2680 (2006). Among these exceptions is the so-called discretionary-function exception, which provides governmental entities and their employees acting in the scope of their employment with immunity from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the

22

part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2006).

¶43. In the 1980s, the United States Supreme Court formulated a two-part "public-policy function test" for determining the application of discretionary-function immunity. *See Gaubert v. United States*, 499 U.S. 315, 322-23, 111 S. Ct. 1167, 113 L. Ed. 2d 33d (1991). This test is a manifestation of the legislative intent behind the discretionary-function exception, which is to "prevent 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813-14, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984) (emphasis added). The United States Supreme Court and the federal circuit and district courts continue to utilize this test to this day.

¶44. In 1993, the Mississippi Legislature abrogated the state's prior common-law and statutory sovereign immunity through the enactment of the MTCA. *See* Miss. Code Ann. § 11-46-5(1) (Rev. 2012). The provisions of the MTCA parallel those of the FTCA, allowing claims "arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." *See id*. Of particular importance to this case, the Legislature also enacted a discretionary-function exception that is identical to the one found in the FTCA. *Compare* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012) *with* 28 U.S.C. § 2680(a). The MTCA's discretionary-function provision provides immunity against claims "[b]ased upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee

23

thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

¶45. In 1999, this Court adopted the United States Supreme Court's public-policy function test as a means of analyzing the MTCA's discretionary-function exception, recognizing that the MTCA exception was patterned on the identical FTCA exception. *See **Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 260 (Miss. 1999) (citing ***Gaubert***, 499 U.S. at 322), *abrogated on other grounds by **Strange ex rel. Strange v. Itawamba Cnty. Sch. Dist.***, 9 So. 3d 1187, 1192 (Miss. 2009). Since then, this Court has applied the public-policy function test to determine whether the discretionary-function exception applies to a given case by looking to the governmental conduct that gave rise to the plaintiff's claim. *See, e.g., **Miss. Dep't of Mental Health and Ellisville State Sch. v. Shaw***, 45 So. 3d 656, 659 (Miss. 2010) ("Simply put, discretionary *acts* which enjoy immunity are those *acts* which promote some social, economic, or political policy.") (emphasis added). Based on the almost identical language of the MTCA and FTCA, I believe there is a practical and rational basis for the Mississippi Supreme Court to interpret the MTCA's discretionary-function exception as the United States Supreme Court has done for its identically worded federal counterpart. Consistency and clarity should be the watchwords in analyzing this heavily litigated area of law.

¶46. Recently, though, this Court created a distinction between governmental "acts," and "functions," holding that "[i]t is the *function* of a governmental entity – not the *acts* performed in order to achieve that function – to which immunity does or does not ascribe under the MTCA." *See **Little v. Miss. Dep't of Transp.***, 129 So. 3d 132, 138 (Miss. 2013).

The majority asserts that this Court's holdings in ***Pratt v. Gulfport-Biloxi Regional Airport Authority***, 97 So. 3d 68 (Miss. 2012), and ***City of Jackson v. Doe ex rel. J.J.***, 68 So. 3d 1285 (Miss. 2011), also support the proposition that this Court must look solely to the broad governmental function, rather than the conduct giving rise to the plaintiff's claim, in determining whether discretionary-function immunity applies. But each of these cases is distinguishable. The plurality in ***Pratt*** actually applied the public-policy function test to the specific governmental conduct in question – an employee's placement of nonslip tape on a staircase – and found it to be discretionary. ***Pratt***, 97 So. 3d at 74-75. And ***Doe*** is completely inapposite and inapplicable to the instant case. In ***Doe***, the governmental function and the conduct giving rise to the plaintiff's claim were one and the same – the City of Jackson's decision to operate a public park. ***Doe***, 68 So. 3d at 1289. There was no narrower governmental conduct to which the public-policy function test could be applied, because the plaintiff's injuries were caused by a private third party. The ***Doe*** majority correctly held that the City of Jackson's decision to create and operate a public park met both prongs of the public-policy function test because that decision was not mandated by any law and was guided only by the policy of promoting "the public interests and welfare." ***Id.*** at 1288. Horn Lake's decision to provide ambulance services to its residents can be likened to the City of Jackson's decision to create a public park, but such a decision is not at issue in the instant case.

¶47. Section 11-46-9(1)(d) clearly requires this Court to look at the specific activity in question, because it is the *performance* of a discretionary function that is guaranteed immunity. *See* Miss. Code Ann. 11-46-9(1)(d) (Rev. 2012). I would hold that our analysis

of discretionary-function immunity must focus on the conduct giving rise to the plaintiff's claims – in this case, the alleged negligent operation of a stretcher. The contrary assertion, that we must look at the"function" or "duty" of the operation of a stretcher, is a distinction of semantics rather than substance. Thus, I believe the proper course is for the Mississippi Supreme Court to apply the public-policy function test in the manner prescribed by the United States Supreme Court.

¶48. As to the first prong of the public-policy function test, "it is the nature of the conduct, rather than the status of the actor," that governs the application of the exception. *Varig Airlines*, 467 U.S. at 813. "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 536. For example, the first prong is not satisfied if a "statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive." *Id.* at 537. *See Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (Miss. 2013) ("Because Section 65-1-65 requires the Department to maintain and repair the state highways, that duty – and all acts in furtherance of that duty – are ministerial unless . . . another statute makes a particular act discretionary.").

¶49. In this case, with respect to the first prong of the public-policy function test, Brantley has not presented any evidence that his injury was the result of a violation of some mandatory course of action by the EMT. On this issue, it is instructive to look to the statutes and regulations governing the provision of emergency services to determine if the Legislature has prescribed a specific course of action in this type of case. *See Berkovitz*, 486 U.S. at 537.

26

*See also* **Gaubert**, 499 U.S. at 324 ("If the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.") However, the nonexistence of a mandatory statute or regulation does not automatically equate to immunity in every case, because this Court still must analyze the conduct in question under the second prong of the public-policy function test. *See* **Shaw**, 45 So. 3d at 659 ("Governmental acts can be discretionary, ministerial, or neither . . . . Just because a governmental act was not ministerial does not mean it was discretionary.").

¶50.    If the conduct in question meets the first prong of the test, the court must then determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." **Gaubert**, 499 U.S. at 323 (citing **Berkovitz**, 486 U.S. at 537). The purpose of the discretionary-function exemption is to "prevent 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." **Varig Airlines**, 467 U.S. at 813-14. For example, the United States Supreme Court has applied the FTCA's discretionary-function exception to the Federal Aviation Administration's procedures for inspecting and certifying aircraft, because those actions represent a policy determination as to how best to "accommodat[e] the goal of air transportation safety and the reality of finite agency resources." *Id.* at 820. The Court in **Varig Airlines** held that, in implementing the agency's inspection and certification procedures, FAA employees had the discretion to "make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* On the other hand, "[t]here are obviously discretionary acts performed by

27

a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7. As an example of a discretionary act that would not be afforded discretionary-function immunity, the Court provided the hypothetical situation where a government employee negligently crashed into another vehicle while driving on a mission connected with her work duties. *Id.* "Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.*

¶51.    The primary focus of the second prong of the test is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. In this regard, the instant case is analogous to *Fang v. United States*, 140 F.3d 1238, 1241-42 (9th Cir. 1998), where the Ninth Circuit Court of Appeals held that the discretionary-function exception of the FTCA did not apply to a claim based on the negligent provision of medical treatment by employees of the National Park Service. In *Fang*, the decedent was traveling through a national park when her car ran off the road and plummeted more than 200 feet down the side of a mountain. *Id.* at 1240. Two National Park Service emergency personnel arrived at the scene shortly thereafter and provided medical assistance to the decedent. *Id.* Unfortunately, the decedent died as a result of her injuries. *Id.* The decedent's wrongful-death beneficiaries filed suit against the United States, claiming the EMTs had negligently failed to stabilize the decedent's broken spine and to render proper CPR. *Id.* In response, the government moved for summary judgment, arguing that it was immune from suit under

28

the discretionary-function exception of the FTCA. *Id.* The district court granted the government's motion for summary judgment, and the plaintiff appealed to the Ninth Circuit Court of Appeals. *Id.*

¶52. On appeal, the Ninth Circuit reversed the district court's grant of summary judgment to the government, holding that a "mere medical error or mistake" is not the type of policy-driven decision the discretionary-function exception was designed to protect. *Id.* at 1241. The Ninth Circuit found that the discretionary-function exception would provide immunity for the National Park Service employees' regulatory decisions regarding the type of equipment to be kept at various sites throughout the park or the required level of training of the park's emergency personnel, because those decisions require the use of policy-based judgment in determining how to best allocate limited government resources. *Id.* at 1241. On the other hand, the court reasoned,

> [O]nce the designated EMTs arrive at an accident scene and begin using the equipment and administering medical care, the policy shield of the discretionary function exception disappears. Whether an EMT properly applies a splint, administers CPR, or transports a patient has nothing to do with the allocation of policy considerations discussed above.

*Id.* at 1242. Applying the public-policy function test to the plaintiff's claims, the Ninth Circuit found that the EMTs' decisions concerning the stabilization of the decedent's spine and their methods of performing CPR involved personal choice and judgment, as no statute, regulation, or National Park Service policy demanded a specific course of action. *Id.* at 1243. However, the EMTs' actions failed the second prong of the test, because no social, economic, or political policy is implicated by the decision of whether and how to stabilize a person's spine or perform CPR. *Id.* Notably, the Ninth Circuit affirmed the district court's

29

holding that the discretionary-function exception barred the plaintiff's claim that the National Parks Service was negligent in failing to provide additional medical equipment, such as cervical collars and backboards, at all emergency stations within the park. *Id.* The National Park Service's internal regulations did not require this particular equipment to be kept at the emergency station where the EMTs in question were located, and the court held that the plaintiff could not challenge this policy-based decision regarding how to allocate emergency equipment throughout the park. *Id.*

¶53.    In this case, under the second prong of the public-policy function test, the decision by Horn Lake to operate an ambulance service for the benefit of its citizens undoubtedly involved the consideration of social and economic policy. However, this is not the conduct that gave rise to Brantley's suit. Applying this Court's precedent and the Ninth Circuit's analogous reasoning in *Fang* to the instant case, it is clear that the conduct in question – an EMT's alleged negligent handling of Brantley's stretcher – implicates no arguable economic, social, or political policies. Brantley's claim does not ask this Court to "second-guess" the policy-based decisions of Horn Lake's governmental authorities. On the contrary, Brantley's claim is based upon "an ordinary judgment made by EMTs in applying their training and expertise to an emergency situation," which the discretionary-function exception was not meant to shield from liability. *Fang*, 140 F. 3d at 1243. Accordingly, I would hold that the discretionary-immunity exception of the MTCA does not apply in this case. I would find that the trial court erred in granting Horn Lake's motion for summary judgment and would remand this case for further proceedings.

**RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**