MAXWELL, Justice,
concurring in result only:
¶ 33. The majority relies on Brantley v. City of Horn Lake[10] to conclude the defendants do not enjoy discretionary-function immunity. While I agree the defendants are not immune, I cannot join the majority in full. In my view, Brantley' marked an unwise and' unworkable departure from longstanding precedent. So I join other voices from this court that disagree with the recent break from' precedent.[11] In *417 stead, I would readopt the longstanding public-policy function test. ■

Stare Decisis

¶ 34. I do not take this position lightly. “The doctrine of stare decisis is the bedrock of our system of jurisprudence.” State ex rel. Moore v. Molpus, 578 So.2d 624, 634 (Miss.1991) (quoting Laurel Daily Leader, Inc. v. James, 224 Miss. 654, 681, 80 So.2d 770, 780-81 (1955) (Gillespie, J., Special Opinion)). This doctrine is based on the premise that, “when a majority of the Court speaks, it speaks as the voice of the State, and is binding in effect until and unless overruled.” Id. (quoting Childress v. State, 188 Miss. 573, 577, 195 So. 583, 584 (1940)). Thus, “absent powerful countervailing considerations, like cases ought to be decided alike.” Id.
¶ 35. But with this notion in mind, it was the majority in Brantley that disregarded stare decisis. See Boroujerdi v. City of Starkville, 158 So.3d 1106, 1115 (Miss.2015) (Waller, C.J., dissenting) (characterizing the majority’s new test as a “departure] from ... precedent without regard for the fundamental legal doctrine of stare decisis ”). In doing so, the majority overruled fifteen years of cases applying the public-policy function test. Brantley, 152 So.3d at 1112; see also City of Magee v. Jones, 161 So.3d 1047, 1050-51 (Miss.2015) (discussing how “this Court’s rules for determining discretionary-function immunity have changed drastically ... in light of the new test set out ... .in Brant-ley ”).
¶ 36. I do understand that the Brantley majority’s aim was to resolve the struggle with how to apply discretionary-function immunity by articulating what it deemed a more “workable rule.” Brantley, 152 So.3d at 1112. Unfortunately, however, the Brantley test missed its mark, proving itself to be unworkable and confusing to practitioners in its short eighteen-month history. The very reason we apply stare decisis is “so that trial courts can make correct decisions and lawyers can properly advise their clients.” United Servs. Auto Ass’n v. Stewart, 919 So.2d 24, 30 (Miss.2005). And when attorneys are left unable to advise their clients on the applicability of discretionary-function immunity in the wake of Brantley, the whole argument for upholding “the new test” based on stare decisis is undermined.
Public-Policy Function Test
.¶37. The long-standing public-policy function test had two prongs.. First, the court would determine “whether the activity in question involved an element of choice or judgment^]” Brantley, 152 So.3d at 1112 (quoting Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 795 (Miss.2012)). If so, the court would next ask “whether that choice or judgment involved social, economic, or political-policy considerations.” Id. But the newly created test, by cqntrast, does not. take policy into account, I find this problematic because the entire purpose of discretionary-function immunity- “is to prevent -judicial ‘second-guessing* of legislative and administrative decisions grounded in social, economic, and political policy through the -medium of an action in tort.’” United States v. Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (emphasis added) (citation omitted). So “when properly, construed, the [discretionary function] exception protects only governmental actions and decisions based on considerations of public policy.”[12] Id.’ (em *418 phasis added). Thus, the policy prong— rather than imposing extrastatutory restrictions on immunity[13] — ensures the discretionary-function-immunity provision is properly construed.
¶ 38. For this reason, I echo the separate opinions in Brantley, Boroujerdi, City of Magee, and Crum v. City of Corinth.[14] I too would “rescind the Brantley analysis because it overcomplicates the process” by focusing on “sometimes arcane regulations.” Crum, 183 So.3d at 854 (Randolph, P.J., concurring in result only). And it does not address the real question — are the alleged negligent actions “susceptible to policy analysis.” Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. I would instead readopt the simpler, less confusing, longstanding, direct public-policy function test.
¶ 39. Turning to this case, if the public-policy function test were applied here, the result would be the same. The alleged failure to adequately notify travelers about a closed lane in a construction zone can hardly be said to be grounded in social, economic, or political policy. Thus, by permitting this case to survive summary judgment, this court is not judicially second-guessing MTC or MDOT policy. Rather, the court is simply allowing Adams to continue to pursue her claim that the defendants acted negligently. So I concur in the result reached by the majority — that the defendants are not entitled to discretionary-function immunity.
WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION.

. Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014).

. See Crum v. City of Corinth, 183 So.3d 847, 853 (Miss.2016) (Randolph, P.J., concurring in result only); City of Magee v. Jones, 161 So.3d 1047, 1052 (Miss.2015) (Pierce, J„ dissenting); Boroujerdi v. City of Starkville, 158 So.3d 1106, 1115-17 (Miss.2015) (Waller, C.J., dissenting); Brantley, 152 So.3d at 11-18-1123 (Waller, C.J., concurring in part and in result). ' ■ *

, In 1999, this court recognized that Section 11 — 46—9(l)(d) of the MTCA ”appear[ed] to be patterned after 28 U.S.C. § 2680(a), the ‘discretionary function’ exception to the Federal Tort .Claims Act,” Jones v. Miss. Dep’t of Transp., 744 So.2d 256, 260 (Miss.1999). So *418 this court adopted the United States Supreme Court’s test for determining discretionary-function immunity. Id. (adopting two-part test established in Gaubert, 499 U.S. at 322, 111 S.Ct. 1267). But the five-four majority in Brantley concluded that federal precedent should not be followed. Brantley, 152 So.3d at 1112. Instead, the majority crafted a completely new test, purportedly "giving effect to the plain language of the statute,” without any consideration for the underlying purpose of Section 11 — 46—9(l)(d). Id. However, the "plain meaning rule" applies only when a statute's words are unambiguous. See, e.g., Buckel v. Chaney, 47 So.3d 148, 158 (Miss.2010). And the great pains the majority in Brantley — as well as the majority in Brantley's precursor, Little v. Mississippi Department of Transportation, 129 So.3d 132, 137-38 (Miss.2013)— takes to explain the phrase "discretionary function or duty” points to the fact Section 11 — 46—9(l)(d)'s language is not unambiguous. Instead, other interpretive tools must be used. And I think this court got it right back in 1999, when it recognized the best tool was the Federal Tort Claims Act, after which our state's act was patterned.

. See Brantley, 152 So.3d at 1112.

. Crum, 183 So.3d at 853 (Randolph, P.J., concurring in result only); City of Magee, 161 So.3d at 1052 (Pierce, J., dissenting); Boroujerdi, 158 So.3d at 1115-17 (Waller, C.J., dissenting); Brantley, 152 So.3d at 1118-1123 (Waller, C.J., concurring in part and in result).