KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 21. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). The nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
 

 Id.
 

 But this Court "must consider all of the evidence 'in the light most favorable to the non-moving party.' "
 
 Boroujerdi v. City of Starkville
 
 ,
 
 158 So.3d 1106
 
 , 1109 (Miss. 2015) (quoting
 
 Palmer v. Anderson Infirmary Benevolent Ass'n
 
 ,
 
 656 So.2d 790
 
 , 794 (Miss. 1995) ). Because I find that April Horton presented ample evidence in response to the motion for summary judgment, demonstrating genuine issues of material fact, I would reverse the judgment of the Circuit Court of Warren County and remand the case to that court for trial. Accordingly, I respectfully dissent.
 

 ¶ 22. The 2009 International Property Maintenance Code, adopted as the Property Maintenance Code of the City of Vicksburg (the Code), requires:
 

 Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have
 
 guards
 
 ....
 

 (Emphasis in original.) The Code incorporates an exception, found in Section 102.6, for buildings designated as historic buildings: "The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the
 
 code official
 
 to be safe and in the public interest of health, safety, and welfare." (Emphasis in original.) The comment to the Code says that, while the code official enjoys "the widest flexibility in enforcing the code when the building in question has historic value," the "most important criterion for application of this section is that the building must be specifically classified as being of historic significance by a qualified party or agent." According to the Code's comment, "[u]sually, this is done by a state or local authority after considerable scrutiny of the historical value of the building."
 

 ¶ 23. Section 104.1 of the Code states that "[t]he
 
 code official
 
 is hereby authorized and directed to enforce the provisions of this code." (Emphasis in original.) The comment to Section 104.1 clarifies that "[t]he duty of the code official is to enforce the code.... In exercising this authority, however, the code official cannot set aside or ignore any provision of the code." Under the plain terms of the Code, the code official is duty-bound to enforce the Code. The only question currently before the Court is whether the exception from Section 102.6 applies.
 

 ¶ 24. The majority holds that 819 Walnut Street qualifies as an "existing building[ ]" or "structure[ ] designated as [an] historic building[ ]." But, under the plain terms of the Code, assuming that the majority's holding is correct, the City had no discretion with regard to the handrail requirement: "[t]he provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings
 
 when such buildings or structures are judged by the code official to be safe and in the public interest of health, safety, and welfare
 
 ." (Emphasis added.)
 

 ¶ 25. Horton attached to her response to the City's motion for summary judgment a letter from Benjie Thomas, a code enforcement officer for the City of Vicksburg, to Malcolm Carson, the owner of 819 Walnut Street, dated April 3, 2013, which mentioned "deficiencies/violations based on the International Property Maintenance Code." This letter informed Carson of his responsibility as the property owner to maintain his premises "in a sanitary and safe condition."
 

 ¶ 26. The letter required that Carson "[c]lean and remove all garbage, trash, rubbish and debris from entire exterior property around home[,] ... [c]ut all grass/weeds on entire exterior property around home ...." Carson also was directed to maintain all shared areas of the home, to clean/sanitize the hallway, bathrooms, and kitchen, and to make necessary
 repairs "to plumbing or mechanical." He further was told to repair walls in hallways and repair "any cracks/holes in sheetrock on walls an[d] ceilings" and to "[r]epair weak floor in bathroom at end of hallway." Carson was instructed to cure electrical system hazards: "[r]eplace all missing or broken wall receptacle covers" and "[i]nstall blanks in breaker box." The letter required also that Carson "[i]nstall smoke alarms in each rooming unit and hallway." Carson was given thirty days to correct the deficiencies and was informed that "[f]ailure to bring the property into compliance within the specified time may force this department to issue a citation for failure to comply ...." So it is clear that Thomas, the code official, did not in April 2013 judge 819 Walnut Street to have been "safe and in the public interest of health and welfare."
 

 ¶ 27. Also attached to Horton's response to the City's motion for summary judgment was a letter from Victor Gray-Lewis, of the City of Vicksburg Department of Community Development, to Carson which was dated February 27, 2014, three days after Erves's fall, informing Carson that "[u]pon making a site inspection[ ] at [819 Walnut Street], the dwelling unit was found to be unsafe, lacks maintenance to a serious degree, in disrepair, unsanitary, contains filth and therefore creates a serious hazard to the health and/or safety of the occupants." Accordingly, the letter continued, "the above referenced building has been condemned and determined to be unfit for human habitation" and "[t]he occupants ... shall have thirty (30) days to vacate the building ...."
 

 ¶ 28. Even if 819 Walnut Street is an "existing building[ ]" or "structure[ ] designated as [an] historic building[ ]" within the meaning of Section 102.6 of the Code, evidence in the record demonstrates that the code officials never deemed it to have been "safe and in the public interest of health and welfare." Accordingly, the code official had no discretion with regard to requiring Carson to comply with the Code's mandate that handrails be erected.
 

 ¶ 29. Nevertheless, the majority finds that Horton failed to establish that the City of Vicksburg owed "the decedent a duty to inspect or condemn the residence at 819 Walnut Street, and did not demonstrate that the City or its employees breached a duty under any adopted ordinance or regulation ...." Maj. Op. ¶ 19. The majority references deposition testimony from Thomas, who explained that the City of Vicksburg had designated 819 Walnut Street to have been an historic building: "819 is color-coded green." According to Thomas:
 

 ["]Green: Denotes a historic building or structure over 50 years old or older that is a contributing part of a district. A contributing historic structure or building is one that contributes to a district's historic significance through location, design, setting, materials, workmanship, feeling and association. Further, the loss of the structure would hurt the integrity of the streetscape." That's on the historic-it is the historic area of 819.
 

 Thomas continues that the language he had quoted was "something from the Architectural Historical Review Board, and I believe it to be an ordinance. Section 814."
 
 [9]
 
 Thomas declined to issue a citation to Malcolm Carson, the owner of 819 Walnut Street, because the City of Vicksburg had deemed the district historic. The majority finds that 819 Walnut Street is an historic building because Thomas opined that it was situated in the "green zone."
 

 The majority further finds that the City of Vicksburg was a "qualified party or agent" entitled to designate historic buildings.
 

 ¶ 30. The majority also references a listing of 819 Walnut Street in a document prepared by the Mississippi Department of Archives and History entitled "Properties in Historic Vicksburg District Historic District." According to the majority, "Horton failed to set forth significant probative evidence or rebuttal to show that there are indeed genuine issues for trial," specifically with regard to the duty element of negligence. Maj. Op. ¶ 17.
 

 ¶ 31. But Horton did respond to the City's motion for summary judgment. She attached an affidavit from Johnnie Daniels, owner and operator of Metro Home Inspection, LLC, a construction manager and property inspector who formerly had worked for the City of Jackson as a building inspector, senior building inspector, and manager of inspection. Daniels opined that the Department of Archives and History listing "established that the home is located in a historical district," but that "the home itself is not deemed a historical home and Malcolm Carson is still required to maintain 819 Walnut Street in compliance with the 2009 International Property Maintenance Code." According to Daniels, the City of Vicksburg "had a duty to enforce the International Property Maintenance Code with respect to 819 Walnut Street" and "breached its duty to enforce the code at 819 Walnut Street ...." Daniels opined that "the house was cited on several occasions prior to this incident" and that "[w]hen the code official conducted these site inspections, the home should have been cited for all the deficiencies [that] includes the lack of a handrail, landing and the condition of the steps."
 

 ¶ 32. Also attached to Horton's response to the City's motion for summary judgment was an affidavit from Cynthia M. Rando, a Certified Human Factors Professional, who opined, as an expert, that [i]f there had been handrails installed on either side of the staircase it is more likely than not that Mr. Emmanuel Erves would have been able to circumvent his fall and reduce the severity of his injuries and prevent death." According to Rando, "code enforcers failed to require the property owner to abide by the International Property Maintenance Code." She continued: "Failing to have properly configurated steps, failing to have handrails and failing to enforce the Code robbed Mr. Erves of the opportunity to break his fall and avoid serious injury and death."
 

 ¶ 33. The affidavits attached to Horton's response render summary judgment improper. Horton's response to the City's motion for summary judgment, contrary to the majority's finding, does demonstrate the existence of genuine issues of material fact with regard to whether 819 Walnut Street was an "existing building[ ] or structure[ ] designated as [an] historic building[ ]." The majority is correct that the ultimate determination of the existence
 
 vel non
 
 of a duty is a question of law.
 
 See
 

 Enterprise Leasing Co.-SouthCent., Inc. v. Bardin
 
 ,
 
 8 So.3d 866
 
 , 871 (Miss. 2009) ("The allegation of a duty cannot suffice as a genuine issue of material fact in order to survive a summary judgment motion."). But in this unique case, specific fact questions underlie the determination of whether a duty exists. And the trial court, in analyzing this case under
 
 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 (Miss. 2014), was faced not with the question of whether a duty of care was owed, but rather whether any ordinance or regulation rendered the duty ministerial.
 

 ¶ 34. The circuit court erred in holding that the City of Vicksburg was, as a matter of law, entitled to discretionary function immunity:
 

 The plaintiff has not pointed this Court to any city ordinance or other regulation that requires the City to force a property owner to install a handrail on the exterior steps of a building that is over fifty years old and located within the City's historic district, thereby rendering the act or failure to act ministerial.
 

 The circuit court failed to take into account Daniels's affidavit. Mississippi Code Section 21-19-25 states that "[a]ny municipality within the State of Mississippi may, in the discretion of its governing authority, adopt building codes ...."
 
 Miss. Code Ann. § 21-19-25
 
 (Rev. 2015). The parties agree that Section 21-19-25 encompasses the "broad governmental function" referenced in
 
 Brantley
 
 ,
 
 152 So.3d at 1113
 
 . But the parties dispute the existence of a "narrower duty that may have formed the basis of the claim against the governmental entity," which we must consider "to determine whether that particular duty has been rendered discretionary or ministerial by statute or regulation."
 

 Id.
 

 Daniels's affidavit established, or at least contradicted, Thomas's deposition testimony that 819 Walnut Street was not an historic building and that, as such, the City had no discretion with regard to requiring Carson to make his property Code-compliant.
 

 ¶ 35. Accordingly, I would reverse the trial court's grant of summary judgment and remand the case for a trial on the merits.
 

 KING, J., JOINS THIS OPINION.
 

 It is of note that the City of Vicksburg and the other defendants did not make this document, whatever it may be, a part of the appellate record.