# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00374-SCT

*MITCHELL SCRUGGS, EDDIE SCRUGGS,*
*SCRUGGS FARM & SUPPLIES, LLC f/k/a AND*
*a/k/a SCRUGGS FARM SUPPLY, INC. AND*
*SCRUGGS FARM JOINT VENTURE*

*v.*

*GREG BOST AND NOWELL INSURANCE*
*AGENCY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2013 |
| TRIAL JUDGE: | HON. JAMES S. POUNDS |
| TRIAL COURT ATTORNEYS: | JAMES L. ROBERTSON |
| | WILLIAM M. BEASLEY, SR. |
| | WILLIAM M. BEASLEY, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES L. ROBERTSON |
| | WILLIAM J. DUKES |
| | JIM WAIDE |
| | RACHEL PIERCE WAIDE |
| ATTORNEYS FOR APPELLEES: | FRED L. BANKS, JR. |
| | WILLIAM M. BEASLEY, SR. |
| | WILLIAM M. BEASLEY, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/23/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. When Monsanto Company sued Mitchell Scruggs and his various agricultural entities

for patent infringement in federal court, Scruggs made a demand on his commercial general

liability insurer, Farmland Mutual Insurance Company. Farmland denied coverage based on Scruggs's alleged intentional conduct. Scruggs then sued Farmland, Greg Bost (the insurance agent), and Nowell Insurance Agency in state court. The circuit court ultimately granted summary judgment for Bost and Nowell. Scruggs appeals to this Court, arguing, among other things, that Bost and Nowell negligently failed to advise him that he needed to purchase patent infringement insurance. Because we find that Scruggs's conduct was uninsurable as a matter of law, we affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. The Underlying Federal Action

¶2. Monsanto Company develops, manufactures, licenses, and sells agricultural chemicals, agricultural biotechnology and other agricultural products. *Monsanto Company v. Scruggs*, 249 F. Supp. 2d 746, 749 (N.D. Miss. 2001). After much research, Monsanto developed genetically modified seeds that had several favorable traits, such as resistance to herbicides and certain insects/pests. *Id.* Monsanto markets their genetically modified soybean and cotton seeds under the Roundup Ready® and Bollgard® brands, respectively.[1] The seeds are protected by several U.S. patents, which were issued before Scruggs's alleged illegal actions took place. *Id.* Monsanto began marketing the Roundup Ready® seed in time for the 1996 planting season and the Bollgard® seed during the 1998 planting season. *Id.* at 750.

---

[1]The Roundup Ready® soybean seeds allow a farmer to apply Roundup® and other herbicides to their entire field without damaging the crop, even after the plants have emerged from the soil. The Bollgard® cotton seeds are resistant to numerous insects and pests that normally prey on cotton crops. *Monsanto*, 249 F. Supp. 2d at 749.

¶3.   Monsanto structured its marketing strategy for its genetically modified seeds carefully. *Id.* Seed companies and farmers who wished to use Monsanto's patented seeds were required to enter into a licensing agreement with Monsanto, which limited use of its seeds to one growing season. *Id.* In other words, farmers could not resell or supply the seeds to any other person, and they could not save any seed to replant the next year. These restrictions were publicized in trade journals and through public meetings with farmers, and they also appeared on the product label. *Id.*

¶4.   Monsanto obtained information that Scruggs might have planted saved Roundup Ready® and Bollgard® seeds during the 2000 growing season. *Id.* After conducting an investigation, Monsanto determined that Scruggs had indeed replanted its seeds, and it filed suit against him in the United States District Court for the Northern District of Mississippi on September 7, 2000. Monsanto alleged that Scruggs "knowingly, intentionally and willfully planted unlicensed,[2] saved Roundup Ready® seed without authorization from Monsanto and used such seed in violation of Monsanto's patent rights."[3] Scruggs denied Monsanto's allegations and brought numerous counterclaims against it. After extensive

---

[2]Scruggs testified in his deposition that he did not sign a licensing agreement when he purchased the seeds because "nobody ever asked [him] to," but he also testified that he was aware of the conditions under which Monsanto licensed its seed technology to farmers.

[3]Monsanto amended its Complaint several times during the litigation. By its Third Amended Complaint, it was alleging that Scruggs had also wrongfully *sold* its seeds to third parties.

litigation[4] and trial,[5] the jury found that Scruggs had willfully infringed Monsanto's patents and awarded it $8.9 million in compensatory damages.[6]

### 2. The State Action Against Farmland

¶5. Beginning in the 1990s, Scruggs did business with insurance agent Greg Bost, and Bost procured insurance coverage for Scruggs's cotton gin and cotton ginning business. At some point in 1999, Scruggs decided to have Bost (who was by then employed by Nowell Insurance Agency) provide insurance coverage for *all* of his farming activities.[7] Bost, several other Nowell Agency personnel and Farmland personnel visited Scruggs's facilities,

---

[4]*See **Monsanto v. Scruggs***, 249 F. Supp. 2d 746 (N.D. Miss. 2001) (granting Monsanto's request for preliminary injunction); 342 F. Supp. 2d 584 (N.D. Miss. 2004) (granting summary judgment for Monsanto on several counts of its complaint); 342 F. Supp. 2d 568 (N.D. Miss. 2004) (granting summary judgment for Monsanto on several counts of Scruggs's counterclaim); 342 F. Supp. 2d 602 (N.D. Miss. 2004) (granting summary judgment for Monsanto on what appears to be remainder of counts in Scruggs's counterclaim); 459 F.3d 1328 (Fed. Cir. 2006) (affirming all rulings by the District Court for the Northern District of Mississippi); 890 F. Supp. 2d 729 (N.D. Miss. 2012) (resolving various post-trial motions).

[5]From our review of the various district court opinions, it appears that Monsanto was granted summary judgment on all of its patent infringement claims against Scruggs, and that the trial proceeded on damages only (and possibly the common-law claims). *See **Monsanto v. Scruggs***, 342 F. Supp. 2d 584 (N.D. Miss. 2004).

[6]Specifically, the jury found that: (1) Scruggs acted willfully; (2) Scruggs owed Monsanto $2.6 million in damages for his unauthorized planting of its patented soybean and cotton seeds; (3) Scruggs made "brown bag" sales of Monsanto's patented soybean seed; and (4) Scruggs owed Monsanto $6.3 million in damages for his unauthorized sale of its patented soybean seeds.

[7]Scruggs stated that Bost approached him and solicited all of his insurance business, while Bost stated that Scruggs was the one who initially requested additional coverage.

observed his operations and conducted extensive interviews with him and his employees to determine potential liability and possible coverage options.

¶6.    Bost presented several coverage options to Scruggs via a written insurance proposal, and Scruggs purchased some options and declined others. Scruggs alleges that he told Bost that he wanted to be protected "in the event that anybody sued us over almost anything." Scruggs alleges that Bost assured him that he would be protected from all potential liabilities, except for any that might arise out of the quality of seed that Scruggs sold to third parties.

¶7.    Scruggs purchased a general liability policy and an umbrella policy, and the policies first went into effect on April 1, 1999. Scruggs subsequently renewed his coverage in 2000. Scruggs testified in his deposition in the state action that he did not mention patent infringement to Bost or ask him about patent-infringement coverage prior to the issuance of the policy in 1999, nor did he mention it before the renewal in 2000.

¶8.    Sometime in early 2000, Scruggs noticed that some unidentified individuals had bought the lot across from him and had installed surveillance cameras to record his farming activities. Scruggs later learned that they were Monsanto employees after the Sheriff's Department arrested some of them for stalking. Scruggs believed that Monsanto was investigating him because it "didn't want [him] replanting seed that had their technology in it," and because it was unhappy with him planting Roundup Ready® seed. Scruggs was aware that Monsanto did not want farmers replanting its patented seed, because he had read ads to that effect in various farm publications.

¶9.    As mentioned above, Monsanto filed suit against Scruggs on September 7, 2000. Scruggs gave notice of the suit to Bost and Nowell and demanded that Farmland defend him.

5

Farmland denied coverage just before Christmas, and Scruggs (along with his various agricultural entities and partners) then filed suit against Bost, Nowell, and Farmland in the Lee County Circuit Court on March 30, 2001.[8]

¶10. In his Complaint, Scruggs alleged that Farmland's denial of coverage was "outrageous and malicious," because Bost and Nowell had promised him that the policy would cover the patent-infringement claims. Scruggs sought a declaratory judgment that Defendants were required to both defend and indemnify him. Scruggs also sought actual and punitive damages and attorneys' fees.

¶11. Scruggs and Farmland engaged in discovery and ultimately filed cross-motions for summary judgment in February and March 2002, respectively. After a hearing, the circuit judge entered an opinion and order granting partial summary judgment for Scruggs. The circuit judge found that Farmland owed Scruggs coverage under the property-damage, personal-injury and advertising-injury sections of the policy. He further found that the intentional-act exclusion did not apply to Scruggs's conduct, because, while Scruggs may have intentionally saved and replanted Monsanto's seeds, he did not intentionally infringe Monsanto's patents, because he had a "reasonable belief" that he could lawfully replant the seeds.

¶12. Finally, the judge found that Farmland had a duty to defend Scruggs going forward in the federal action. The circuit judge issued a preliminary injunction in Scruggs's favor and

[8]Interestingly, Scruggs testified in his deposition that he renewed his policy with Farmland for a second time in April 2001, even *after* Monsanto had sued him and *after* Farmland had denied coverage. He also testified that he renewed his coverage despite Bost reminding him that Farmland had determined that no patent-infringement coverage existed. Bost testified to this conversation as well.

ordered Farmland to immediately pay all of the attorneys' fees that Scruggs had accrued prior to the summary judgment hearing, and to pay all of Scruggs's attorneys' fees accrued after that date, within thirty days of receiving an invoice. Farmland filed a motion to vacate the circuit judge's opinion and order, which the judge denied.

¶13. Farmland appealed, and this Court reversed and rendered in a unanimous opinion written by Justice Graves.[9] *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714 (Miss. 2004). This Court began its analysis by stating:

> Despite the technological complexity of the underlying facts, we only need to address one basic legal issue to resolve this matter: does the Scrugges' insurance policy cover the torts complained of in Monsanto's lawsuit? After a review of our jurisprudence and the language of the policy, we answer that question in the negative.

*Id.* at 717. This Court then closely examined the bodily-injury, property-damage and advertising-injury sections of the policy and determined that, based on the allegations in Monsanto's complaint, no coverage existed under any of those provisions. *Id.* at 718-21. This Court also held that Scruggs's actions were intentional and, as such, uninsurable: "Furthermore, as a matter of public policy, people and businesses cannot purchase insurance coverage for illegal activities." *Id.* at 720 (citing *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 405 (Miss. 1997)).

¶14. This Court ultimately concluded that there were "three reasons why coverage must be denied; first, the plain face of Monsanto's complaint does not trigger the policy's coverage and duty to defend; secondly, the torts complained of were intentional; and last, public policy

---

[9]Justice Diaz not participating.

compels us to refuse coverage for intentional and illegal actions." *Id.* at 720. This Court reversed the circuit court's entry of partial summary judgment for Scruggs, reversed the preliminary injunction requiring Farmland to pay Scruggs's legal fees, and entered summary judgement on Farmland's behalf. *Id.* at 721.

   3.    The State Action Against Bost and Nowell

¶15.   As mentioned above, Scruggs filed *one* Complaint against Farmland, Bost, and Nowell in March 2001, but the case has proceeded in a bifurcated manner. Farmland and Scruggs litigated the action initially, as the pressing issue was Farmland's duty to defend. Scruggs focused on his claims against Farmland until this Court reversed and rendered in Farmland's favor. After the federal jury awarded Monsanto $8.9 million in compensatory damages in September 2010, Scruggs pursued his claims against Bost and Nowell, which had remained virtually dormant since 2001.

¶16.   Following this Court's decision in *Farmland*, Scruggs amended his Complaint against Bost and Nowell twice. In his Third Amended Complaint, Scruggs alleged that he was entitled to a declaratory judgment that they had failed in their professional duties as insurance salesmen; that they had failed to use that degree of care that a reasonably prudent insurance agent would exercise; that they had negligently misrepresented to Scruggs that the policy would cover him for anything except the quality of seed sold to third parties and that it provided the broadest possible agricultural liability coverage available at that time; and that they were contractually bound to Scruggs and had breached that contract.

¶17.   Bost and Nowell filed a motion for summary judgment on February 28, 2011. They argued that Scruggs could not possibly maintain his claims, as his conduct would never have

8

been insurable. So, they argued, because any policy that would have covered Scruggs in spite of his intentional actions would have violated public policy, they could not possibly have been liable for any sort of negligence or negligent misrepresentation.

¶18. Scruggs responded and argued, among other things, that Bost and Nowell could be liable for professional negligence given their history with Scruggs, and that the jury verdict against Scruggs was for the *strict liability* tort of patent infringement only. After a hearing, the circuit judge granted Bost's and Nowell's motion for summary judgment. The circuit judge found that:

> According to the Mississippi Supreme Court, public policy does not allow parties to purchase insurance coverage for intentional and illegal actions [citing **Farmland**]. Here, there is no dispute that the actions Plaintiffs took were intentional. Indeed as the Mississippi Supreme Court pointed out, "it took a preliminary injunction by a federal court to stop the Scruggses from using or selling the seeds." [citing **Farmland**]. Plaintiffs have never denied they acted intentionally; they simply assert their intentional acts were not unlawful. Because it has long been undisputed that Plaintiffs acted intentionally and that public policy does not allow individuals to insure against intentional actions, this Court finds, in accordance with **Farmland**, that Mississippi law prohibits insurance coverage for the conduct that resulted in Monsanto's claims. Accordingly, Defendants cannot be liable, contractually or otherwise, for not obtaining and/or failing to offer such insurance to the Plaintiffs.

¶19. As for Scruggs's allegations regarding Bost's and Nowell's failure to advise, the circuit judge found that no duty arose, "because neither Defendants nor Plaintif even mentioned patent infringement coverage." Finally, the circuit judge found that Bost and Nowell could not be held liable for not realizing the potential for the patent-infringement suit, because "the Mississippi Supreme court has held that request for 'full coverage' does not require an insurance agent to provide coverage for all conceivable risks or perils." The

9

circuit judge dismissed all of Scruggs's claims with prejudice, and he now appeals to this Court.

¶20.    Scruggs posits six issues on appeal:

(1) Whether the Circuit Court erred when it granted summary judgment for the professional insurance agent defendants, when there were genuine issues of material fact[] regarding the insured's claims of professional negligence, negligent misrepresentation and failure to warn;

(2) Whether the Circuit Court erred in holding that public policy, to the extent that it prohibits insurance coverage for intentional and illegal acts, would have prevented Scruggs from acquiring any liability insurance coverage for the strict liability tort of patent infringement;

(3) Whether the insurance agents have professional liability when they procure and sell to the insured a liability insurance policy the terms of which cannot be taken at face value, given the established rules regarding the construction and application of the terms of a liability insurance policy;

(4) Whether the Circuit Court erred in holding that a professional insurance agent who undertakes to advise a potential insured about his coverage needs can escape liability with regard to a particular category of coverage by entirely failing to mention it;

(5) Whether insurance agents have professional liability when they advise and induce an insured to purchase a policy with the representation that such policy will cover all of the insured's liability coverage needs, if that policy in fact fails to provide coverage for a significant category of the insured's liability risks; and

(6) Whether an insurance agent with a ten year professional relationship with an insured, who solicits all of the insured's insurance business, and who joins insurance specialists in an on-site investigation of the insured's commercial and business activities, has a duty to bring the information thus gleaned to bear in proposing comprehensive coverage to the insured.

We find that Scruggs's arguments really boil down to one issue. So, despite the rather tedious and lengthy litigation in this case to date, the question before this Court is simple:

10

Did the circuit judge properly grant summary judgment in favor of Bost and Nowell? We find that he did.

## STANDARD OF REVIEW

¶21. The standard of review in a summary judgment case is well known. Mississippi Rule of Civil Procedure 56(c) allows summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Conrad v. Holder**, 825 So. 2d 16, 18 (Miss. 2002). This Court will review a granted motion for summary judgment de novo. **Id.** When conducting a de novo review, this Court must view the evidence in the light most favorable to Scruggs, but if the evidence shows that Bost and Nowell are entitled to judgment as a matter of law, summary judgment should be entered in their favor. **Id.**

## ANALYSIS

¶22. After careful consideration, we find that Scruggs's actions were both intentional and illegal,[10] and therefore uninsurable as a matter of law. As a result, Bost and Nowell simply cannot be liable for any form of negligence.[11] In other words, it would not matter what negligent misrepresentations or omissions Bost and Nowell might have committed if Scruggs's actions are uninsurable as a matter of law.

---

[10]Black's Law Dictionary defines "illegal" as "forbidden by law; unlawful." *See Black's Law Dictionary* 815 (9th ed. 2009). Patent infringement is clearly prohibited by federal law. *See* 35 U.S.C. § 271. We are not convinced by Scruggs's argument that, because one can be held strictly liable for patent infringement (*i.e.*, because intent is not an element), that somehow saves the act from being "unlawful."

[11]Scruggs does not make any sort of *intentional* misrepresentation and/or fraud claims against Bost and Nowell.

¶23. "In general, it is against public policy for an insurance contract to provide coverage for the intentional or willful misconduct of an insured." *Couch On Insurance* § 101:22 (3d ed. 2010). This Court had acknowledged that principle prior to its decision in ***Farmland*** in ***Delta Pride Catfish, Inc. v. Home Insurance Company***, 697 So. 2d 400 (Miss. 1997): "Delta Pride cannot purchase insurance coverage for its intentional, illegal activities. '[People should not be allowed to insure themselves against acts prohibited by law.'" ***Id.*** at 405 (citing ***Graham Resources, Inc. v. Lexington Ins. Co.***, 625 So. 2d 716 (La. App. Ct. 1993)).

¶24. And in ***Farmland***, this Court affirmed that principle unequivocally:

> Furthermore, as a matter of public policy, people and businesses cannot purchase insurance coverage for illegal activities. For we do not allow corporations or persons to "insure themselves against acts prohibited by law."
> . . .
> There are therefore three reasons why coverage must be denied; first, the plain face of Monsanto's complaint does not trigger the policy's coverage and duty to defend; secondly, the torts complained of were intentional; and last, public policy compels us to refuse coverage for intentional and illegal actions.

***Farmland***, 886 So. 2d at 720-21 (citations omitted).

¶25. The evidence of Scruggs's intentional conduct is ample throughout this record and the federal court action. First, Scruggs himself admitted several times in his deposition that he acted intentionally:

> Q: I understand, but it wasn't no [sic] accident in 1990 – in – in 2000, at planting time, at their [sic] April, May, June beans, it wasn't by accident that Roundup Ready® technology beans went in the grain drills that ended up being planted on your property was it?
> A. No, sir.
> Q: That was deliberate actions on your part, deliberately made, a conscious, informed decision to plant Roundup Ready® soybeans?
> . . .

A: Well, yeah, I – I planted the seed.

Q: You made a conscious, informed decision to plant the seed before actually instructing your laborer to go plant it, correct?

A.  Yes, sir.

Q: And I presume the same would apply as far as your cotton crop that same year to the extent that whatever portion of it involved the Roundup Ready® technology?

A: Yes, sir.

. . .

Q: Do you agree with this statement? [referring to the federal court opinion granting Monsanto an injunction]  Mr. Scruggs unqualifiedly testified that he has never executed a license for the use of Monsanto's gene technology; he further – he further admits he was aware of the conditions under which Monsanto licensed its technology to seed companies and farmers.

. . .

A:  Yeah.  I – I've never executed a license.

. . .

A: No, sir, I've never signed one.

Q: What about the next phrase?  You were aware of the conditions under which Monsanto licenses technology to seed companies and farmers.

A: Yes, sir, I was aware of that.

Second, District Judge Pepper found that Scruggs had acted intentionally:

In addition to the scientific evidence presented, Mitchell Scruggs admitted during his testimony that much of his soybean and cotton crops were Roundup® "resistant;" he further admitted to the use of Roundup® herbicide on his crops.

. . .

There is evidence that defendants have unlicensed Roundup Ready® seed in large quantities. Despite Mr. Scruggs'[s] protestations to the contrary, the plaintiff presented considerable evidence that the defendants have engaged in the sale of reconditioned seeds containing Monsanto's patented gene technology.

. . .

Monsanto is not obligated to afford defendants the opportunity to sell its products. To force it to do so under the present circumstances would be to reward the defendants for their willful infringement of the plaintiff's patented seed technology.

***Monsanto Co. v. Scruggs***, 249 F. Supp. 2d 746, 751, 760 (N.D. Miss. 2001).

13

¶26. Third, as mentioned above, the federal jury found that Scruggs had acted "wilfully."[12]

And finally, and perhaps most important for our discussion here, *this Court* previously found

that Scruggs had acted intentionally:

> *From the face of Monsanto's complaint, only intentional torts are alleged. In addition, the Scruggses' pattern of conduct has been one of intentional acts. Indeed, it took a preliminary injunction by a federal court to stop the Struggles from using or selling the seeds. See* **Monsanto Co. v. Scruggses**, 249 F. Supp. 2d 746 (N.D. Miss.2001). The Scruggses never disputed that the conduct was intentional, only that the effects were unintended; in fact, they dispute there was any harm at all. They offer that Monsanto's claim of patent infringement and damage to trade reputation is "utter nonsense, [since] the farmers saving Roundup Ready soybeans and replanting them in future years is no more harmful to Monsanto's slogans, brand names and trade reputation th [an] the used car salesman damages Ford Motor Co. by selling used Fords."

> That analogy does not fit the facts at hand. There is nothing illegal about selling used cars, but the cars must not be stolen. *The seeds at issue are like a stolen Ford, for at the hearing for the preliminary injunction in federal court "Scruggs also admitted that [he and the other defendants] never entered into a commercial license for authorized use of the plaintiffs' patented biotechnology."* **Scruggs**, 249 F. Supp. 2d at 751. In the federal court the Scruggses also contended in part that the Monsanto patents were invalid, that there was patent misuse, and that there were antitrust violations. ***Id.*** at 752-54. The district court dismissed these claims as "a charade." ***Id.*** at 754.

> *The Scruggses may not like the consequences of their intentional actions and may dispute the law that protects Monsanto against their actions, but that does not mean their liability insurer must be made a party to such an action.* The reasonable and unambiguous insurance contract between the Scruggses and Farmland excludes all intentional acts. Therefore, there is *no coverage* under the "Bodily Injury and Property Damage Liability" section of the policy.

*Farmland*, 886 So. 2d at 719-20 (emphasis added).

---

[12]We note that this finding subsequently was set aside by Judge Mills in **Monsanto Co. v. Scruggs**, 890 F. Supp. 2d 729 (N.D. Miss. 2012), in which he concluded that Scruggs's actions did not rise to the level of "objective recklessness" necessary for imposition of treble damages. We discuss Judge Mills's opinion further below.

¶27. There is one federal court opinion written by District Judge Michael Mills where he finds that Scruggs did *not* act willfully. ***Monsanto Co. v. Scruggs***, 890 F. Supp. 2d 729 (N.D. Miss. 2012). As expected, Scruggs relies heavily on this opinion. While it is true that Judge Mills did ultimately set aside the jury's finding of willfulness in the federal action, a close reading of the opinion reveals that he did so only in light of the heightened federal standard under which treble damages can be imposed:

> [This court finds a certain degree of reprehensibility to Scruggs'[s] actions in this case. At the same time, the court also finds, with regard to each of these factors, mitigating factors which counsel against an award of treble damages. Accordingly, even if the court were to limit its analysis solely to the ***Read*** factors, it would still conclude (albeit more narrowly) that treble damages should not be awarded in this case.
> . . .
> [The court finds that the unique legal and historical context in which this case arose, in particular the prior lack of legal clarity regarding the patentability of trait-bearing seeds, supports a conclusion that Scruggs did not "act[ ] despite an objectively high likelihood that [his] actions constituted infringement of a valid patent." This court has already discussed at length above its reasons for reaching this conclusion, and this issue is clearly one which a court is in a better position to understand than a jury. Accordingly, while this court is reluctant to overturn the jury's findings of fact regarding a trial which it did not witness, it concludes, in light of ***Bard***, that the question of willfulness is partially one of law. The court further concludes that Scruggs did not act with objective recklessness in this case to support a finding of willfulness, since, at the time of the infringement in the case, the law in this context had not been definitively resolved.

***Monsanto***, 890 F. Supp. 2d at 740, 742 (citing ***Read Corp. v. Portec***, 970 F .2d 816 (Fed. Cir. 2012), abrogation recognized by ***Bard Peripheral Vascular, Inc. v. W.L. Gore and Assocs.***, 670 F .3d 1171 (Fed. Cir. 2012)). In other words, Judge Mills's opinion is not proof of Scruggs's lack of willfulness; rather it is only a finding that Scruggs's conduct did not rise to the level of "objective recklessness" required for treble damages to be imposed.

¶28. In sum, we find that Scruggs's actions were intentional and illegal and therefore uninsurable under Mississippi law. So Bost and Nowell cannot be held liable under any negligence theory, as Scruggs' actions simply were not insurable. In other words, *even if* Bost and Nowell did have some duty to recognize Scruggs's need for patent-infringement insurance and failed to inform him that he needed it, they cannot be liable for that omission, as insurance coverage for Scruggs's intentional actions simply cannot exist in Mississippi as a matter of law. Thus, the circuit court's grant of summary judgment in Bost and Nowell's favor was correct, and we affirm.

## CONCLUSION

¶29. Mississippi caselaw is clear that one's intentional, illegal actions cannot be insured as a matter of law. We find that Scruggs's actions were intentional and therefore uninsurable. Because his actions are uninsurable as a matter of law, we find that Bost and Nowell cannot be liable for any alleged negligent misrepresentations or omissions, and we affirm the judgment of the Lee County Circuit Court.

¶30. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.**

16