**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2014-CA-01674-COA**

| | |
|---|---|
| **MONICA HARRIS** | **APPELLANT** |

**v.**

| | |
|---|---|
| **THE TOWN OF WOODVILLE** | **APPELLEE** |

DATE OF JUDGMENT: 07/09/2014
TRIAL JUDGE: HON. L. BRELAND HILBURN
COURT FROM WHICH APPEALED: WILKINSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: EVERETT T. SANDERS
AISHA ARLENE SANDERS
ATTORNEYS FOR APPELLEE: L. CLARK HICKS JR.
R. LANE DOSSETT
NATURE OF THE CASE: CIVIL - TORTS - OTHER THAN PERSONAL
INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION: SUMMARY JUDGMENT GRANTED IN
FAVOR OF APPELLEE
DISPOSITION: AFFIRMED - 07/26/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Monica Harris filed a civil suit against the Town of Woodville and Chief Jessie Stewart of the Woodville Police Department in his personal capacity. Harris alleged state-law claims of assault and battery, negligent and/or intentional infliction of emotional distress, common-law harassment, failure to properly train, failure to properly supervise, and conspiracy, as a result of an incident involving Chief Stewart slapping Harris on her bottom while in the workplace. Harris filed the claims pursuant to the Mississippi Tort Claims Act (MTCA). *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). The trial court dismissed the

action Harris filed against Chief Stewart individually pursuant to a settlement.

¶2. Following discovery, the Town of Woodville moved for summary judgment, arguing that Chief Stewart's conduct occurred outside of the course and scope of his employment. The trial court ultimately found that the Town of Woodville bore no liability for Chief Stewart's actions herein because the alleged assault against Harris indeed occurred outside the course and scope of Chief Stewart's official duties and that Harris failed to raise a dispute of material fact. The trial court thus granted summary judgment pursuant to Mississippi Rule of Civil Procedure 56. Harris then filed a motion to reconsider, which the trial court denied. Harris now appeals, claiming the following assignment of error: "the trial court erred in dismissing [her] claims against the Town of Woodville for failure to properly train and supervise and for conspiracy[.]" Finding no error, we affirm the trial court's grant of summary judgment.

## FACTS

¶3. The facts reflect that Harris's claims arise from Chief Stewart's conduct and statements during an incident at the Woodville Police Department. On October 10, 2011, Harris, a probation officer, entered the Woodville Police Department to conduct a drug test on an individual under probation. Meanwhile, Chief Stewart, the chief of the Woodville Police Department, and Woodville police officers Kenny Anderson and Carl Cage, were in Stewart's office discussing police matters when the topic turned to Harris.

¶4. According to Officer Cage's deposition testimony, the three men commented that Harris had a "big butt." Chief Stewart stated, "I'll slap her on that butt." Officer Cage

2

testified that Chief Stewart then called Harris into his office. The record reflects that when Harris came to the door of his office, Chief Stewart asked: "We good, right?" Harris responded, "Yeah, we good." Officer Cage observed that Harris seemed "kind of reluctant." Chief Stewart then asked Harris to come around the desk where he was sitting. Harris responded, "Nah, I'm not coming around there." Chief Stewart again asked Harris, "Well, we good, right?" Harris answered, "Yeah, we good," and she came towards Chief Stewart's desk. According to Officer Cage's deposition testimony, Chief Stewart told Harris to look at a plant near his desk. Officer Cage testified that Harris bent over to look at the plant, and then Chief Stewart "popped [Harris] on the behind." The record reflects that when Harris turned around and asked him why he did that, Chief Stewart asked, "You didn't see that bug on you?" When questioned during his deposition, Officer Cage surmised that Chief Stewart tried to tell Harris that she had a bug on her bottom "to throw her off from him hitting her on the behind, I guess." Officer Cage stated that Harris appeared angry, and she asked Officers Cage and Anderson: "Did y'all see that?" The record shows that when Harris began to walk out of the office, Chief Stewart stopped her and talked to her about drug testing an individual. After Harris left the office, Officer Cage stated that Chief Stewart "grabbed a lollipop out of his drawer, and he said, 'I'll go give her a lollipop, and I'll apologize to her.'"

¶5. Officer Cage testified during his deposition that the following day, Chief Stewart called him into his office and said, "Well, Carl, what I did yesterday, soon as I did it, I kind of knew that I had messed up." Chief Stewart then told Officer Cage that he liked his work ethic and liked what he was doing, and Chief Stewart then offered him the assistant-chief-of-

3

police position. Officer Cage stated that he told Chief Stewart that if he was offering him the job "in light of the incident that happened the day before, that I couldn't accept it," but that Chief Stewart assured him that he offered him the advancement because of his work ethic.

¶6. Harris filed a complaint with Mayor Sharon Robinson the day after the incident, and she also filed a formal grievance with the Town of Woodville. The Board of Aldermen subsequently met to address the incident. The Board conducted an investigation, including interviews of the parties present in the room and a thorough review of the written grievance. Following the investigation, the Board voted to place Chief Stewart on unpaid administrative leave, beginning seven days after the incident until January of the next year, covering a total of ninety days. In her deposition, Mayor Robinson provided testimony that, as a result of his actions, the Board also ordered Chief Stewart to complete a viewing of the Town of Woodville's sexual-harassment video and complete a management-training course. The Wilkinson County Justice Court also found Chief Stewart guilty of simple assault. Chief Stewart appealed his conviction, and on July 31, 2012, he eventually pled nolo contendere to the charge of simple assault in the Wilkinson County Circuit Court. The trial court sentenced him to pay a fine of $500 and court costs.

¶7. On February 21, 2013, Harris filed a civil suit against Chief Stewart and the Town of Woodville. Harris alleged multiple causes of action, including assault and battery, negligent and/or intentional infliction of mental distress, common-law harassment, failure to properly train and/or supervise, and conspiracy. The Town of Woodville moved for summary

4

judgment on March 24, 2014, arguing that Chief Stewart's actions fell outside the course and scope of his employment. Chief Stewart filed a response opposing summary judgment on April 8, 2014, arguing that the record had not yet been developed in the case and, as such, "summary judgment adjudication [was] not ripe." Harris filed her response on June 3, 2014, asserting that summary judgment should be denied because genuine issues of material fact existed.

¶8. The trial court heard oral arguments on the matter on June 3, 2014. On July 9, 2014, the trial court granted summary judgment after finding that Chief Stewart acted outside of the course and scope of his employment when he "slapped or touched" Harris on the bottom. The trial court held that, as a result of this finding, Mississippi Code Annotated section 11-46-5 (Rev. 2012) mandates that the Town of Woodville possessed no liability for Chief Stewart's alleged actions. The trial court further found that Harris failed to offer any evidence in support of her other state-law claims regarding failure to train and/or supervise and her general conspiracy claim against the Town of Woodville. The record reflects that on July 14, 2014, the trial court entered an order dismissing Chief Stewart from the case in order to implement a settlement agreement reached between Harris and Chief Stewart.

¶9. Harris now appeals, claiming that the trial court erred in dismissing her claims against the Town of Woodville for failure to properly train/supervise and conspiracy.

## STANDARD OF REVIEW

¶10. Our supreme court has held that "governmental entities and their employees shall be exempt from liability in certain situations outlined in the MTCA." *Brantley v. City of Horn*

5

*Lake*, 152 So. 3d 1106, 1108-09 (¶6) (Miss. 2014); *see* Miss. Code Ann. § 11-46-9. "[I]mmunity is a question of law and is a proper matter for summary judgment." *Brantley*, 152 So. 3d at 1109 (¶6). On appeal, we review a trial court's grant of summary judgment de novo. *Scruggs v. Bost*, 149 So. 3d 493, 499 (¶21) (Miss. 2014). We also review a trial court's application of the MTCA de novo. *Brantley*, 152 So. 3d at 1109 (¶6). We will discuss the MTCA further in our discussion below.

**DISCUSSION**

### I.     Failure to Properly Train/Supervise

¶11.     Harris argues that the trial court erred in granting summary judgment and dismissing her claim for the failure to properly train and/or supervise Chief Stewart and her claim for conspiracy against the Town of Woodville. Harris maintains that even if Chief Stewart acted outside the course and scope of his employment, the Town of Woodville was not automatically relieved of liability with respect to all of Harris's claims. Harris also contends that her claims against the Town of Woodville involved the exercise of ministerial functions, thereby depriving the Town of Woodville of its immunity provided by section 11-46-9(1)(d).

¶12.     The MTCA provides: "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d).

¶13.     We recognize that the supreme court recently clarified the standard for determining

6

whether discretionary-function immunity applies. *Brantley*, 152 So. 3d at 1112 (¶20); *see Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶10) (Miss. 2013). In *Brantley*, the supreme court clarified that "it is the function being fulfilled, rather than the act performed in furtherance of that function, to which discretionary-function immunity does or does not attach." *Brantley,* 152 So. 3d at 1112 (¶20). The *Brantley* court explained:

> The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.

*Id*. at 1114-15 (¶26). The supreme court in *Brantley* also held:

> Because sovereign immunity attaches when the governmental function involved is discretionary, the plaintiff bears the burden of proving that the narrower function or duty at issue has lost its discretionary-function immunity. Therefore, we hold that a plaintiff may defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.

*Id*. at 1115 (¶28).

¶14. Harris argues that while providing police protection constitutes a discretionary function, the training aspect constitutes a ministerial duty due to the fact that it is regulated or governed to a large degree by specific statutes. Harris cites to Mississippi Code Annotated section 45-5-3 (Rev. 2015) in support of her argument and asserts that public policy mandates that there be "sufficiently trained law enforcement officers on local and state levels." Section 45-5-3 indeed declares that the State's public welfare and public policy

7

demand sufficiently trained law-enforcement officers. A review further reveals that Mississippi Code Annotated section 45-5-5 (Rev. 2015) empowers the commissioner of public safety "to establish, maintain and supervise a 'law enforcement officers' training academy'" for the purpose of providing training facilities for members of the department of public safety and such other law enforcement officers of the state, counties or municipalities[.]"

¶15. Harris also cites to Mississippi Code Annotated section 45-6-19 (Rev. 2015), which imposes the minimum continuing-education requirements for municipal police chiefs and municipal police officers as required by the Board on Law Enforcement Officer Standards and Training.[1] Harris claims that the Town of Woodville possessed no local policies or procedures requiring training or monitoring the training of its officers or other employees. Harris asserts that sensitivity training regarding sexual harassment, sexual assault, and sexual abuse would be logically required in the law-enforcement context. Harris argues that the testimony of defendants clearly establishes that not only did Chief Stewart not receive any training relative to sexual harassment, he was not required to have such training because the Town of Woodville did not have a sexual-harassment policy at the time of the incident that is the subject of this action.

¶16. Upon review, we acknowledge that Harris failed to allege or provide any evidence to show that the Town of Woodville failed to comply with the training required in Mississippi

---

[1] Mississippi Code Annotated section 45-6-19(1) provides: "The chief of police of any municipality in the State of Mississippi is required to annually complete twenty (20) hours of executive level continuing education courses which are approved by the Mississippi Board on Law Enforcement Officers Standards and Training."

for law-enforcement officers. *See* Miss. Code Ann. §§ 45-6-1 & 45-6-11 (Rev. 2015). She also failed to allege or provide any evidence raising a question of fact or disputing the evidence that Chief Stewart satisfied the continuing education required by Mississippi statute or by any other law or regulation. Even though Harris failed to show the Town of Woodville was required to conduct additional training over and above that required by statute for law enforcement, the record nevertheless shows undisputed facts that Chief Stewart completed some sexual-harassment training locally prior to the October 10, 2011 incident, and again completed further local training after the Board placed Chief Stewart on unpaid administrative leave from his position as chief of police.

¶17.    With respect to statutorily required law-enforcement-officer training, the Mississippi Legislature established that the administration of criminal justice constituted a statewide concern, and as a result, the Legislature provided for the coordination of training for law-enforcement officers and set standards for such training. *See* Miss. Code Ann. § 45-6-5 (Rev. 2015) (establishing Board on Law Enforcement Officer Standards and Training). Hence, in Mississippi Code Annotated section 45-6-7 (Rev. 2015), the Legislature conferred upon the Mississippi Board on Law Enforcement Officer Standards and Training the following: the power to establish minimum educational standards for law-enforcement officers; to establish minimum curriculum requirements for training courses; and to approve law-enforcement-training schools. The Legislature provided for the establishment and coordination of these standards to ensure that quality training was available statewide for law

9

enforcement of small municipalities and larger cities alike.[2]  The position of police chief is an appointed position, and there are no statutory qualifications to hold that position. However, an individual appointed to the chief-of-police position must post a bond while serving as police chief, and statutory law requires that the police chief must be certified as a law-enforcement officer by the Mississippi Board on Law Enforcement Officer Standards and Training and receive additional executive training.  *See generally* Miss. Code Ann. § 21-21-1 (Rev. 2015) (chief of police); *see also* Miss. Att'y Gen. Op., 2004-0427, 2004 WL 2031744, *Bankston* (Aug. 27, 2004).  Therefore, a police chief must be certified as a law-enforcement officer by the state board, and receive annual continuing education and executive training required by the state board.  *See* Miss. Code Ann. § 45-5-7 (Rev. 2015) (faculty and curriculum of law-enforcement-training academy); Miss. Code Ann. § 45-6-9 (Rev. 2015) (criminal-justice planning commission); Miss. Code Ann. § 45-6-11 (qualifications and certification), Miss. Code Ann. § 45-6-19 (continuing education for police chiefs and officers).

¶18.    In support of her argument, Harris cites to *Gamble v. Dollar General Corp.*, 852 So. 2d 5, 14 (¶¶31-32) (Miss. 2003), wherein the supreme court stated:

---

[2] *See* Miss. Code Ann. § 45-5-3; Miss. Code Ann. § 45-6-3 (Rev. 2015) (defining law-enforcement officer); *see also* Miss. Att'y Gen. Op., 1991 WL 577400, *Hutcherson* (Jan. 3, 1991) (town marshal required to meet training requirements if he falls within definition of law-enforcement officer).  *Compare Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989) (To hold a municipality liable on a theory of inadequate training or supervision, the plaintiff must prove "at least a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police conduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.").  *See also* Miss. Admin. Code 31-1-301 (legislative intent and related definitions).

10

Gamble has simply misstated her issue with regard to her claim for negligent training. Instead of claiming that Dollar General's training was inadequate or negligent, Gamble's claim is better understood as an allegation that Dollar General provided no training. Stated as an issue of no training, the jury could infer Dollar General's negligence without the need of expert testimony on proper or adequate training. The jury could properly find that Dollar General was negligent in failing to provide training to [its employee,] Thornton.

There was also testimony that Thornton, a regional manager, was required to go to other stores to train employees in dealing with shoplifting. However, other than receiving a booklet, there was no evidence that showed that Thornton had received any training. Based on Dollar General's failure to show any training provided to Thornton, other than handing her a manual, it was proper to allow the jury to consider the issue of negligence for Dollar General's failure to train its employee. This issue is without merit.

Harris asserts that in the present case, unlike *Gamble,* the Town of Woodville possessed no policy and provided no training with respect to sexual harassment. Harris maintains that this failure to possess a local sexual-harassment policy and to provide local training creates an issue of fact regarding whether or not the Town of Woodville properly trained Chief Stewart. However, Harris's argument fails to address that the Legislature established the authority and funding to provide professional statewide training for law-enforcement officers with the Mississippi Board on Law Enforcement Officer Standards and Training. *See* Miss. Admin. Code 31-1-301:16; Miss. Code Ann. § 45-6-1. Moreover, Harris fails to provide any legal authority that the Town of Woodville is required to provide training in addition to that training statutorily required by the law-enforcement academy. Also, as discussed, Harris's argument fails to acknowledge that even though the Town of Woodville possessed no written sexual-harassment policy and even though such training was not required, the record shows that the Town of Woodville nonetheless provided Chief Stewart with some local sexual-

11

harassment training before the incident at issue.

¶19. The record reflects that the Mississippi Rule of Civil Procedure 30(b)(6) deponent for the Town of Woodville, Cathey McCurley, testified that the Town of Woodville's employee handbook was adopted on July 3, 2012. She further testified that the Town of Woodville possessed no written sexual-harassment policy: "It was just understood that you would treat each person with respect." Regardless of whether the Town of Woodville published a written policy or handbook, the record shows without dispute that Chief Stewart received some local training before the incident and again after he was suspended. The record reflects that, at his deposition, Chief Stewart testified that in 2010, the year before the incident, he attended training on sexual harassment and abuse. The Town of Woodville also maintains that Harris has offered no legal authority for the proposition that the lack of a written harassment policy creates a private right of action against governmental entities for an assault by an employee.

¶20. Additionally, regarding Harris's claims of inadequate training and supervision, the record reflects that no evidence exists to show that the Town of Woodville was on notice of any prior allegations or complaints against Chief Stewart. *See Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989). The record shows no dispute as to Chief Stewart's status as a certified law-enforcement officer who completed all of the training required for such certification by the Mississippi Board on Law Enforcement Standards and Training. *See* Miss. Code Ann. § 45-6-3 (defining law-enforcement officer).[3]

---

[3] *See and compare Elkins v. McKenzie*, 865 So. 2d 1065, 1072 (¶24) (Miss. 2003) ("Only where a municipality's failure to train its employees in a relevant respect evidences

¶21. In addition to arguing that Harris failed to present a question of material fact as to the inadequate training or supervision, the Town of Woodville maintains that it is not liable for Chief Stewart's conduct because Chief Stewart's actions constituted a criminal offense—namely, simple assault. *See* Miss. Code Ann. § 11-46-5. Mississippi Code Annotated section 11-46-5 provides that "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . any criminal offense other than traffic violations." The Town of Woodville asserts that, pursuant to the MTCA, it is not liable nor considered to have waived immunity—and Harris may not recover damage—if Chief Stewart's conduct (1) occurred outside the course and scope of his employment or (2) constituted a criminal offense. *See Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361 (¶13) (Miss. 2004).

¶22. We acknowledge that the test for determining whether Chief Stewart's actions fell outside the course and scope of his employment necessarily requires a determination of whether his conduct was committed "in the course of and as a means to accomplishing the purposes of his employment [with the Woodville Police Department] and therefore[ was] in furtherance of the [police department's] business." *Wood v. Mossy Oak Props.*, 120 So. 3d 443, 446 (¶8) (Miss. Ct. App. 2013); *see also Cockrell*, 865 So. 2d at 362 (¶14); *Adams v. Cinemark USA Inc.*, 831 So. 2d 1156, 1159 (¶9) (Miss. 2002). An employer "is not liable for its employee's actions if the employee abandoned his employment and went about some

a 'deliberate indifference' to the rights of inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [42 U.S.C.] § 1983.").

13

purpose of his own not incidental to the employment." *Hall v. Mi Toro No. 2 Inc.*, 115 So. 3d 125, 128-29 (¶11) (Miss. Ct. App. 2013) (citation omitted). In *Cockrell*, 865 So. 2d at 362 (¶17), the supreme court held that when a police officer "diverted from his employment for personal reasons, he was no longer acting in the furtherance of his employer's interests." Upon our review, we find no error in the trial court's application and analysis of this precedent on the present facts. We further find no error in the trial court's finding that Chief Stewart's actions fell outside the course and scope of his duties as police chief. Since Chief Stewart's actions fell outside the course and scope of his law-enforcement duties, then resolution of the issue before this Court requires no analysis of ministerial versus discretionary duty. *See generally Cockrell*, 865 So. 2d at 361-63 (¶¶13-18).

¶23. We further acknowledge that the claims raised by Harris are state-law claims and not federal. As stated, the Legislature vested the duty of training and establishing uniform criteria for such with the Mississippi Board on Law Enforcement Standards and Training. *See Bd. on Law Enf't Officer Standards & Training v. Voyles*, 732 So. 2d 216, 218 (¶8) (Miss. 1999); Miss. Code Ann. § 45-6-1 (legislative intent); Miss. Code Ann. § 45-6-11 (qualifications and certifications). By the creation of this board and the Mississippi Law Enforcement Training Academy, the state has provided uniform and quality training to law-enforcement officers in towns and counties across the state. *Voyles*, 732 So. 2d at 218 (¶8). Moreover, the record reflects no evidence to show that the Town of Woodville possessed knowledge or notice that any additional training was needed.

¶24. We therefore find no error in the trial court's determination that Chief Stewart acted

14

outside the course and scope of his law-enforcement duties when committing the simple-assault offense herein. *See Scruggs*, 149 So. 3d at 499 (¶21); *Brantley*, 152 So. 3d at 1109 (¶6). We further find that the record reflects that no question of material fact exists as to any negligent supervision or training, and we therefore affirm the trial court's grant of summary judgment as to the Town of Woodville on Harris's claims of assault and battery, negligent and/or intentional infliction of mental distress, common-law harassment, and failure to properly train and/or supervise. *Id.*

## II. Conspiracy

¶25. Harris also argues that sufficient evidence exists to create an issue of material fact as to whether the Town of Woodville, acting through its officials and/or employees and Chief Stewart, engaged in a conspiracy to protect the Town of Woodville from civil liability as well as to protect the employment of Chief Stewart. Harris acknowledges that Chief Stewart was found guilty of simple assault in justice court, and she acknowledges that he entered a plea of nolo contendere to the simple-assault charge in circuit court. Harris, however, maintains that the Town of Woodville took no additional action against Chief Stewart after he was found guilty; instead, he continued his tenure as chief of police. Harris asserts that the Town of Woodville turned a blind eye to Chief Stewart's conduct for employment purposes. Harris also argues that Mayor Robinson's deposition testimony reflects that she took no action against Chief Stewart based on Officer Cage's claim that Chief Stewart attempted to bribe him and then later demote him in retaliation for providing testimony supportive of Harris's claims.

15

¶26. Harris's argument fails to address the undisputed evidence in the record that the Town of Woodville obtained statements of factual information from all who were present at the time of the incident, and that the Town of Woodville imposed adverse administrative action against Chief Stewart. The record further shows without dispute that seven days after the incident, the Town of Woodville placed Chief Stewart on administrative leave from his position as chief of police without pay for ninety days, and then placed him on probationary status. The Town of Woodville also required Chief Stewart to complete additional sensitivity training, and the Town of Woodville formally censored him. Harris's argument implies that Chief Stewart should have received a more severe adverse administrative employment action by the Town of Woodville or should have been terminated. Harris's argument also fails to acknowledge that Chief Stewart was prosecuted in justice court for simple assault. Chief Stewart then appealed to circuit court, where he entered a plea of nolo contendere. As a result of his conviction for simple assault, Chief Stewart paid a $500 fine and court costs. The results from the adverse employment action of the Town of Woodville and the independent action of the trial court's conviction and punishment fail to establish the elements for conspiracy. Harris presents no evidence or inference to create a question of material fact to support her claim of an alleged conspiracy by the Town of Woodville to protect itself from civil liability or to protect Chief Stewart's position as police chief. We recognize that "mere allegation[s] of material fact [are] insufficient to generate a triable issue of fact and avoid summary judgment." *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1167 (¶9) (Miss. Ct. App. 2007) (internal quotation marks omitted); M.R.C.P. 56.

16

¶27.    "A conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Bassett Servs. Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (¶37) (Miss. 2004) (citing *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)).  Our supreme court has explained that "[w]here a civil conspiracy gives rise to damages, a right of recovery may arise." *Id*.  In *Bradley v. Kelley Brothers Contractors*, 117 So. 3d 331, 339 (¶32) (Miss. Ct. App. 2013), we held that in order to "establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and (4)] damages to the plaintiff as a proximate result."

¶28.    The record reflects that Harris presented no evidence to create a question of material fact as to the existence of any agreement between two or more persons to accomplish any unlawful purpose.  Harris also fails to present a question of material facts as to the existence of any overt act to further any such conspiracy.  As stated, the supreme court has reiterated that "the party opposing summary judgment may not rest upon the mere allegations or denials of [her] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial. . . . The mere allegation of material fact is insufficient to generate a triable issue of fact and avoid summary judgment." *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 914 (¶9) (Miss. 2011) (internal quotation marks omitted); *see also* M.R.C.P. 56(e).  Since the record reflects no dispute of material fact regarding Harris's conspiracy claim, we also affirm the trial court's grant of summary judgment on this issue.

¶29.    **THE JUDGMENT OF THE WILKINSON COUNTY CIRCUIT COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE**

17

**APPELLANT.**

LEE, C.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. GRIFFIS, P.J., AND WILSON, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., NOT PARTICIPATING.